THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTONIO HERNANDEZ, Defendant-Appellant.

First District (3rd Division) Nos. 82—847, 82—1256 cons.

Opinion filed January 18, 1984.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Edward Barron, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following a jury trial, defendant, Antonio Hernandez, was convicted of murder and attempted murder and sentenced to concurrent terms of 30 years' imprisonment. On appeal, defendant argues that the trial court erred in denying his motion to suppress an in-court identification by witness Leobardo Lara, and identification testimony

by witnesses Victor Rivera and Jose Padilla. Defendant also contends that the State's evidence was not sufficient to prove his guilt beyond a reasonable doubt.

The facts adduced at the hearing on the motion to suppress identification testimony follow. Witnesses for the prosecution testified that on March 15, 1980, shortly after 5:30 a.m., Leobardo Lara and Jose Rodriguez were shot in a social club located at 634 North Racine Avenue. Jose Rodriguez died as a result of the shooting. Leobardo Lara was severely wounded. Lara testified that on March 15, 1980, he went to the social club after work, arriving there at 5 a.m. Defendant was already in the bar. Lara began playing pool and while playing was shot in the stomach by defendant. This happened within an hour after Lara's arrival.

Lara testified that after the first shot he turned away from the pool table and saw defendant with a gun in his hand. Defendant pointed the gun at Lara and fired a second shot which misfired. Lara fell to the floor pretending to be dead. Lara testified that he then heard several shots and saw Jose Rodriguez fall. The club was not crowded at the time of the shooting. Defendant was standing one foot away from Lara. Defendant was wearing a long gray coat. Lara had seen defendant many times in the area of Chicago and Ashland avenues and knew defendant by the name of Sabor.

Lara talked to police officers while in the emergency room of St. Mary's Hospital. Lara testified that he told the officers what happened in the club and defendant's name. Lara also testified that he was shown two sets of photographs by police officers. He was shown the first set of photographs while in the intensive care unit and the second set after he was placed on the regular ward. Lara testified that on each occasion he was shown five or six photographs and he identified a picture of defendant as being that of the man who shot him in the club.

Officer Walter Siemieniak testified that he went to the hospital on March 15, 1980, and showed Lara one photograph of the defendant whom Lara identified as the shooter.[1]

Victor Rivera testified that he was working as a bartender at 634 North Racine Avenue on March 15, 1980. He first saw defendant in the club at about 2:15 a.m. Over the course of the evening Rivera served defendant five Bacardis straight. Defendant left the club at about 4 a.m. and returned around 4:45 a.m. Defendant sat near the

---

[1]In the discussion which follows, we accept the version of the facts most favorable to defendant, i.e., that Lara was shown only one photograph of defendant.

pool table which was approximately 40 feet from Rivera. Rivera further testified that at about 5:15 a.m. he heard shots in the club. He looked toward the pool table and saw Rodriguez fall. Defendant had a gun in his hand and was demanding that the door be opened.

Rivera described defendant as 5 feet 6 inches or 5 feet 7 inches, with a little mustache and beard and short sideburns. He testified that defendant wore a long green coat. He further testified that he had seen defendant in the area of Chicago and Noble avenues a couple of times before the shooting. Rivera had also seen defendant at Rivera's father's bar. Rivera worked there as a bartender for a period of five years and during that time defendant frequented the bar on most weekends.

Rivera was taken to the police station where he was shown books of photographs. Other people from the club were viewing photographs in the same room. Rivera did not identify anyone in the books. Rivera was then shown three photographs, two of which were of defendant, and he identified defendant as the shooter. Rivera testified that he did not view the three photographs with any other witnesses present. A week later Rivera identified defendant in a lineup at the police station. Rivera testified that he viewed the lineup with the witness Jose Padilla.

Jose Padilla was in the club at 634 North Racine Avenue on March 15, 1980. Padilla testified that he was standing at the bar talking to Victor Rivera when the shooting occurred. He heard the shots, looked toward the door and saw defendant with a gun in his hand. He heard defendant shout, "Open the door, goddamn it. Open the door." The club was well lit and Padilla stood approximately 30 feet from defendant. Padilla testified that he was only able to see the side of defendant's face when the shooting took place. He was afraid to look at defendant lest defendant shoot him. On examination by the court, Padilla testified further that he saw defendant's face for three minutes; he kept "looking at him about two minutes, two or three minutes, till the guy went out the door." He said defendant was wearing a raincoat from the military service which reached down to his calf.

Padilla testified that he was shown a book of photographs at the police station. He did not identify anyone in the book. He was later shown a single photograph of defendant whom he identified as the shooter. Padilla testified that he was sure of the identification even though in the photograph defendant did not have any hair. He further testified that he viewed a lineup two weeks after the shooting and identified defendant as the shooter. Padilla stated that he viewed the lineup alone.

Defendant contends that the trial court erred in denying his motion to suppress identification testimony by witnesses Victor Rivera and Jose Padilla. Defendant argues that the identification procedures used at the police station were suggestive and that neither witness had an independent basis for his identification testimony. Defendant notes in particular that two of the three photographs shown to Victor Rivera were of defendant and that Jose Padilla was shown only one photograph. Defendant also notes Victor Rivera's testimony that he viewed the lineup in the presence of another witness.

The standard for admitting evidence of out-of-court identification is whether there exists a very substantial likelihood of misidentification. (*Neil v. Biggers* (1972), 409 U.S. 188, 198, 34 L. Ed. 2d 401, 410, 93 S. Ct. 375, 381.) Suggestive confrontations are disapproved because they increase the likelihood of misidentification. (*Neil v. Biggers* (1972), 409 U.S. 188, 198, 34 L. Ed. 2d 401, 410, 93 S. Ct. 375, 381.) But the use of a suggestive procedure in and of itself will not support the exclusion of pretrial identification evidence. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) The reliability of the identification must be considered, and if it overcomes the suggestiveness of the procedures used, the testimony concerning the out-of-court identification may be admitted.

The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.) These factors test whether there is a basis independent of the suggestive procedures for the admissibility of the identification.

Applying the *Manson-Biggers* factors to the instant case, we agree with the trial court that the identifications by Rivera and Padilla were reliable. Both had ample opportunity to observe defendant at the time of the shooting. The club was well lighted, and was not crowded. Rivera stood 40 feet from defendant; Padilla was 30 feet away when the shots were fired. The record does not indicate whether Rivera or Padilla gave descriptions of the shooter to the police. We are thus unable to test the accuracy of prior descriptions.

Only a short time elapsed between the crime and the confrontations. The photographic identifications took place on the day of the

crime. The lineup identifications took place within five weeks of the crime. Moreover, both witnesses demonstrated a high level of certainty at the confrontations. Rivera was able to identify defendant in two photographs although one photograph showed defendant without hair. Padilla identified a photograph of defendant as being that of the shooter. Both witnesses testified that at the time of the identifications they were sure the photographs depicted the shooter. The witnesses later identified defendant in a lineup.

Our supreme court has considered an additional factor in evaluating the reliability of an identification: " 'any acquaintance with the suspect prior to the crime.' " (*People v. Bryant* (1983), 94 Ill. 2d 514, 521, 447 N.E.2d 301; *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) Rivera testified that before the date of the shooting he had seen defendant a couple of times in the area of Chicago and Noble avenues and many times at Rivera's father's bar.

■■ Upon application of the *Manson-Biggers* factors, we agree with the trial court that the out-of-court identifications by Rivera and Padilla were reliable. We moreover reject any challenges to the in-court identifications by those witnesses. Since we find the challenged identifications to be reliable, testimony as to those identifications and any identifications in their wake is admissible. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n.10, 53 L. Ed. 2d 140, 151 n.10, 97 S. Ct. 2243, 2251 n.10; *People v. Bryant* (1983), 94 Ill. 2d 514, 521, 447 N.E.2d 301; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, cert. denied (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The same considerations which indicate that the out-of-court identifications were reliable lead us, of course, to conclude that the in-court identifications rested upon independent origins sufficient to establish separate reliability and were thus properly admitted. *People v. Bryant* (1983), 94 Ill. 2d 514, 522.

■■ Lastly, defendant contends that the trial court committed error by allowing Leobardo Lara's in-court identification of defendant when it had previously excluded Lara's out-of-court identification. Defendant argues that by excluding the out-of-court identification, the judge clearly indicated no independent basis existed by which to determine the identification was reliable. Defendant then reasons that the lack of an independent basis for the out-of-court identification renders inadmissible the in-court identification since the court could not find both the existence and non-existence of an independent basis when faced with the same evidence.

We disagree with defendant's basic premise that the trial judge found no independent basis to support the admissibility of the out-of-

court identification. The words of the trial judge are contrary to such an assumption:

"I believe that he knew who the shooter was; that he knew him from a person on the street; that he had seen him many times before, and asking the question under the totality of the circumstances, is the identification reliable. Reliability is the linchpin. Does there exist a substantial, even a substantial likelihood of irreparable identification [*sic*]? I don't think so."

The trial judge moreover provided an explanation for the exclusion of the identification:

"It would have been so much easier for this police officer, who goes to 11th and State to gets a picture of Sabor, and get a picture of the defendant, to have told the person, whomever, the clerk of photo section up there, and just say —— and throw in about another 20 pictures or 10 pictures of a person of Spanish ancestry or Puerto Rican, Mexican, no matter what words he uses, and just went over there with about 10 photos and then walked into the hospital room and said, do you see Sabor here. Can you pick him out. *** I'm doing this because of the facts, and I think you ought to tell Officer Siemienak why I did it and the reasons why. It just would have taken no more time at all, or 10 or 15 seconds, and it would alleviate so much of the problem in this case."

The trial court excluded the identification not for lack of an independent basis, but because of the police officer's behavior.

Moreover, application of the *Manson-Biggers* factors shows that Lara's out-of-court identification was reliable—that there existed an independent basis for the identification. Lara had an opportunity to view defendant at the time of the crime. Lara testified that after the first shot he turned around and saw defendant with a gun in his hand. He stared at defendant for what was estimated to be two seconds. Defendant was standing approximately one foot from him. Between the time of the first shot and the time of the second shot, all of Lara's attention was focused on defendant. The record indicates that Lara was not asked to give a description of defendant after the crime. We thus cannot test for accuracy of prior descriptions.

The confrontation took place within days of the crime. Lara testified that he was in intensive care when he was shown the photographs of defendant. Lara identified defendant as the shooter without hesitation.

The record reveals that Lara was acquainted with defendant and had seen him in the neighborhood before the date of the shooting. He

knew defendant by the name of Sabor. The trial judge said he believed that Lara "knew who the shooter was; he knew him from a person on the street, that he had seen him many times before." We conclude that Lara's in-court identification rested upon an independent origin sufficient to establish separate reliability and was thus properly admitted. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

■ Defendant has asked us to either reverse his convictions or reverse the convictions and order a new trial as a remedy for the admission of erroneously received identification testimony. A conviction based on an eyewitness identification at trial following pretrial identifications will be set aside only if the identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) Since we conclude that the out-of-court identifications by witnesses Lara, Rivera and Padilla were reliable and therefore did not give rise to a substantial likelihood of irreparable misidentification, we refuse to set aside defendant's convictions.

■ We turn now to defendant's contention that since the identification witnesses were impeached and lacked credibility, he was not proved guilty beyond a reasonable doubt.

The testimony given at trial by witnesses Lara, Rivera and Padilla were substantially the same as that given at the pretrial hearing on the motion to suppress. Indeed, the testimony at trial was stronger in that the three witnesses identified the State's exhibit No. 5, a green coat recovered by the police outside the door of defendant's apartment, as a coat similar to the one the shooter was wearing.

"[I]t is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence." (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) Moreover, " '*** the testimony of one witness is sufficient to convict *** provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made.' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) A reviewing court will therefore not "reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt." (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. ct. 2858.) The evidence in this case does not raise a reasonable doubt of defendant's guilt.

Positive identifications were made by three witnesses. The jury could well have found one or more of the witnesses to be credible. We find ample support in the record for the jury's verdict, and we will not reverse defendant's convictions.

For the aforementioned reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.