(No. 58720.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEVEN PETTIT *et al.*, Appellees.

*Opinion filed March 23, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia Schneider, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Kathleen J. Hamill, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellees.

JUSTICE CLARK delivered the opinion of the court:

Defendants, Steven Pettit, Gerald Rein and Robert Carr, Jr., were arrested on March 20, 1981, and charged with the offense of home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)). Defendant Pettit was also charged with aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1)). Pettit's motion for severance was granted, and he was convicted of both charges in a bench trial in the circuit court of Winnebago County on July 15, 1981. Pettit received concurrent sentences of 10 years for home invasion and 4 years for aggravated battery. Defendants Carr and Rein were convicted of home invasion in a bench trial on July 15, 1981, and sentenced to 8 years in prison. The cases were consolidated on appeal. The appellate court reversed the three defendants' convictions for home invasion but sustained Pettit's conviction for aggravated battery (114 Ill. App. 3d 876), and we granted the State's petition for leave to appeal (87 Ill. 2d R. 315(a)).

On March 17, 1981, Steven Pettit, Gerald Rein and Robert Carr, Jr., visited the home of Duane Moore, a supplier of illegal drugs. Moore was confined to a wheelchair and had sold the three defendants drugs that did not meet with their approval. The three defendants told Moore that they wanted to buy 200 "hits" of LSD, and Moore called his supplier, Ned Bassett, and asked him to bring the LSD to Moore's apartment. When Bassett arrived, Pettit, Rein and Carr drew guns and demanded the address of Bassett's drug source. The three defendants forced Moore and Bassett to accompany them to the home of Bassett's supplier, Steve Anderson. Moore was carried to the defendants' truck in his wheelchair.

The five men went to the home of Steve Anderson, who lived in the first floor of a two-story house at 1413 North Court Street in Rockford. The house was divided into two apartments; Anderson lived in the first floor of the house with his girlfriend and 4-year-old son. Another couple, George Meek and Mary Lynn, lived in the second floor of the house. On March 17, 1981, Anderson and his girlfriend were not home, but Mary Lynn was babysitting for Anderson's son. Pettit, Rein and Carr forced their way into the first-floor apartment, and Mary Lynn began screaming. Meek came downstairs and was ordered to lie face down on the floor. Moore and Bassett were brought in from the truck.

The intruders spent the next two hours waiting for the return of Anderson. Pettit testified that he had drunk nearly a case of beer before arriving at Anderson's apartment, as well as ingesting stimulants and depressants. Pettit brought a 12-pack of beer into the first-floor apartment and drank 8 or 10 more beers, while Meek drank two beers. Pettit became impatient and demanded that Mary Lynn call Anderson at the City Limits bar in Beloit, Wisconsin. Lynn had told Pettit that Anderson might be found there. Pettit told Mary Lynn to tell Anderson that his son was choking on a bottle cap, and that Anderson should return home immediately. Lynn was not able to get in contact with Anderson.

Pettit then told Lynn to accompany him upstairs to see if anyone was in the second-floor apartment. When they found the second-floor apartment was deserted, Pettit ordered the rest of the entourage upstairs. Lynn and the child were ordered into the bedroom, and Meek was told to kneel down. Pettit carried Moore upstairs and placed him in a chair. Both trials produced conflicting testimony concerning subsequent events, but some common threads emerge from the testimony. Pettit grew impatient and began harassing Ned Bassett by pushing

him and punching him in the face. Pettit drew his pistol and began choking Bassett with an electric cord. Bassett began to fight back, and he bit Pettit in the leg. During the course of the struggle, Pettit's gun went off twice. The first bullet hit the ceiling and the second bullet hit Bassett in the right leg. Pettit, Rein and Carr left the apartment, and took Moore and Bassett with them. The three defendants took Moore and Bassett to Moore's home and left them there. Bassett was hospitalized for his bullet wound and facial injuries.

It is important to note that the information charged the three defendants with home invasion of the second-floor apartment, not the first-floor apartment. Pettit was charged with aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1)), but no other charges were brought against the three defendants. Pettit's conviction for aggravated battery is not the subject of this appeal, and we must confine our analysis to the specific proscriptions of the home-invasion statute (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)).

Three issues are presented on appeal: (1) Does the home-invasion statute require that the victims be inside the invaded home at the time of the invasion? (2) Were victims present in the home in the case at bar? (3) Was the trial judge biased against the defendant Pettit?

Resolution of the first issue requires close scrutiny of the home-invasion statute:

> "Sec. 12—11. Home Invasion.
>
> (a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and
>
> > (1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs ***." Ill. Rev. Stat.

1981, ch. 38, par. 12—11(a)(1).

The case before us presents a situation that does not conform to the precise language of the statute. When Pettit, Rein and Carr "invaded" the second-floor apartment, the dwelling was deserted. The statute specifically requires the presence of one or more persons to constitute a violation. The State argues that recent case law supports the contention that constructive presence satisfies the requirements of the home-invasion statute. In *People v. Pavic* (1982), 104 Ill. App. 3d 436, the defendant was convicted of several incidents of rape, deviate sexual assault, robbery, burglary and home invasion. In *Pavic*, the defendant followed single women home from a grocery store and tampered with the circuit breaker in the basement of their apartment building. When the women left their dwelling to turn the electricity back on, the defendant entered the dwelling and raped the women on their return. (104 Ill. App. 3d 436, 438-39.) The *Pavic* court ruled that the basement of an apartment building was part of the victims' "dwelling place." (104 Ill. App. 3d 436, 447.) We do not agree with this interpretation, and we hold that the statute requires the physical presence of one or more persons in the dwelling to constitute a home invasion. To the extent this opinion is inconsistent with the interpretation in *Pavic* we now overrule it.

The intent of the legislature can best be determined by the plain and ordinary meaning of the statutory language. (*People v. Moore* (1978), 69 Ill. 2d 520, 523; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40.) The plain meaning of the home-invasion statute requires the presence of one or more persons within the dwelling at the time of the invasion.

We now consider the second issue: whether victims were present in the dwelling at the time of the invasion. The State maintains that even if we find that constructive

presence does not satisfy the terms of the statute, the facts in this case still warrant a conviction of home invasion. The State argues that Pettit made three successive entries into the second-floor apartment. The last two entries were made after the residents had been brought upstairs. See *People v. Smith* (1983), 114 Ill. App. 3d 1007; *People v. Fox* (1983), 114 Ill. App. 3d 593.

We agree with the assessment of the appellate court:

> "Certainly a home invasion occurred here; but it was an invasion of Anderson's home, not Meek's, and the defendants were not charged with the invasion of Anderson's home. The evidence, in fact, fails to show that the defendants 'knowingly entered the dwelling place of another [Meek's].' Ned Bassett testified he drew the defendants a plan of the house, including the upstairs. He also testified that, although he had been buying drugs from Anderson for two to three years, he thought Anderson lived alone, was not aware that different people lived upstairs, and that he did not know Meek or Mary Lynn prior to the night of the occurrence. George Meek testified he told defendant Pettit that 'we [he and Mary Lynn] were babysitting for Anderson.' " 114 Ill. App. 3d 876, 881.

Finally, we turn to the question of whether the trial judge was biased against Pettit. We note that Pettit's conviction for aggravated battery was not appealed to this court. Since we are reversing Pettit's conviction for home invasion, we need not consider the issue of the alleged bias of the trial judge. We have reversed Pettit's conviction on the only charge brought before this court.

We therefore conclude that the actions of the three defendants did not constitute home invasion as charged. The convictions of Pettit, Rein and Carr for home invasion were properly reversed by the appellate court and their sentences vacated. The appellate court remanded Pettit's aggravated battery conviction for a new sentencing hearing. Since this ruling has not been appealed by the State

and is not before us, we affirm the judgment of the appellate court.

*Judgment affirmed.*