(No. 59545.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FLOYD COHOON, Appellant.

*Opinion filed November 30, 1984.*

Randy E. Blue, Deputy Defender, and E. Joyce Randolph, Assistant Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Randy Patchett, State's Attorney, of Marion (Mark L. Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a one-count information filed in the circuit court of Williamson County, defendant, Floyd Cohoon, was charged with the offense of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a)). Following a jury trial defendant was convicted and sentenced to 60 years' incarceration in the penitentiary to be served consecutively to the term imposed for violation of parole (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—9) for his 1975 conviction of rape. The appellate court affirmed (120 Ill. App. 3d 62), and we allowed defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)). The facts are adequately set forth in the opinion of the appellate court and will be restated here only to the extent necessary to discuss the issues.

The complainant testified that on January 2, 1981, at approximately 5:30 p.m., she entered her home in a rural area of Williamson County. After she had entered the house, a man stepped out from behind the door and closed it. After a struggle he led her into the bedroom and forced her to submit to an act of sexual intercourse. He then tied her legs together, threw a sleeping bag over her, and left.

Approximately seven weeks later, complainant was hypnotized by Special Agent Connell F. Smith of the Illinois Division of Criminal Investigation. Following this hypnosis session, complainant was shown a photographic array from which she selected defendant's photograph. Prior to the hypnosis, complainant had not been shown any photographs. In the photograph which she selected, "Cohoon" is legibly imprinted on defendant's shirt and

the photograph bears the legend "Illinois Dept. of Corrections, Vienna-Correctional Center," and a number. Following the hypnosis, the only addition to the description which complainant had previously given of the rapist was that he had very large ears.

Following the rape, complainant had told her husband and the police that she believed she had seen her attacker before but could not place him. She described him as very tall, medium build, dark hair, and no mustache. Based on this description, complainant's husband suggested the name of Floyd Cohoon, a man who had done some insulation work in their house several weeks earlier. Defendant's name was also mentioned when sheriff's investigator Roger Odum had interviewed complainant prior to the photographic identification session. Odum testified that it was possible that he had mentioned defendant's prior criminal record to complainant's husband.

Defendant contends that the testimony concerning the identification made from the photograph should have been excluded because the scientific reliability of hypnosis, which was an underlying factor in producing the identification, has not been demonstrated. He contends further that the identification of the defendant from the photographic array was impermissibly suggestive and that the in-court identification should have been suppressed for the reason that it was without a basis independent of the suggestive identification procedure.

In affirming the conviction the appellate court held that even though the pretrial identification from the photographic array was impermissibly suggestive, the complainant's identification testimony was properly admitted because her in-court identification was based on events independent of the impermissibly suggestive photographic array. We agree with the appellate court that the photographic array was impermissibly suggestive. The

complainant testified that she and her husband had discussed the possibility that Floyd Cohoon was the man who had raped her. She stated that she noticed that, in the photograph from which she made the identification, the defendant's name appeared on his shirt. Furthermore, the identification was made immediately following an interview during which the complainant was under hypnosis.

We need not and do not decide whether hypnosis-induced testimony is sufficiently suspect *per se* to hold it inadmissible. Special Agent Smith testified that an individual under hypnosis might "confabulate" or "make up and fill in things that they can't remember." He acknowledged that it was not possible for the hypnotist to determine what was truth and what was confabulation. This is consistent with the findings contained in the recognized treatises on the subject of hypnosis, and illustrative is the statement contained in Orne, *The Use and Misuse of Hypnosis in Court*, 27 International Journal of Clinical and Experimental Hypnosis 311 (1979). Dr. Orne, discussing the difficulties which may be encountered through the forensic use of hypnosis, said:

> "The hypnotic suggestion to relive a past event, particularly when accompanied by questions about specific details, puts pressure on the subject to provide information for which few, if any, actual memories are available. This situation may jog the subject's memory and produce some increased recall, but it will also cause him to fill in details that are plausible but consist of memories or fantasies from other times. It is extremely difficult to know which aspects of hypnotically aided recall are historically accurate and which aspects have been confabulated." (27 International Journal of Clinical and Experimental Hypnosis 311, 317-18.)

> "Though it is possible that accurate information is recovered, the important effects that motivation can exert on memory—hypnotically enhanced or otherwise—must be

taken into account in assessing the 'memories' that are obtained." (27 International Journal of Clinical and Experimental Hypnosis 311, 332.)

Under the circumstances shown here, we hold that the photographic identification procedure was impermissibly suggestive and gave rise to a very substantial likelihood of irreparable misidentification.

In *People v. McTush* (1980), 81 Ill. 2d 513, the court said:

> "While it is the defendant's burden to establish that the pretrial confrontation was impermissibly suggestive (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 511), once accomplished, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' *Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 53 L. Ed. 2d 140, 159, 97 S. Ct. 2243, 2257 (Marshall, J., dissenting); *People v. Lee* (1973), 54 Ill. 2d 111, 118." 81 Ill. 2d 513, 520.

The People contend that they have sustained the burden and argue that "her detailed description of the rapist's clothing, race, hair color and length and his approximate weight and height prior to hypnosis indicates that there was an independent basis for the reliability of her photographic identification of the defendant." The sufficiency of the complainant's in-court identification of the defendant must be determined from the totality of the circumstances. (*People v. Holiday* (1970), 47 Ill. 2d 300, 307.) The factors to be considered in determining whether, under the totality of the circumstances, the identification was reliable, even though the identification procedure was suggestive, include the witness' opportunity to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of her prior description, her degree of certainty, and the time elapsed between the crime and the identification. *Manson v.*

*Brathwaite* (1977), 432 U.S. 98, 114, 53. L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.

The record shows that although the witness had seen the defendant over a period of several days while he and another man performed work at her home, and had learned his name and discussed the possibility that he might be the offender, she made no such identification until after the hypnosis. Prior to the hypnotic interview, there was no mention of what appears from the photograph to be defendant's most striking feature, his very large ears. In view of the time which elapsed between the date of the offense and the photographic identification, the witness' uncertainty during that period, and the admitted hazard of confabulation, we hold that the People failed to sustain the burden of proof that "the witness is identifying the defendant solely on the basis of [her] memory of events at the time of the crime." (*Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 53 L. Ed. 2d 140, 159, 97 S. Ct. 2243, 2257.) We hold that in admitting the in-court identification of the defendant, the circuit court committed error which requires reversal of the judgment.

For the reasons stated the judgment is reversed and the cause remanded to the circuit court of Williamson County for further proceedings consistent with this opinion.

*Reversed and remanded.*