THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 84—596

Opinion filed June 26, 1986.

JIGANTI, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, James S. Veldman, and John J. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant Victor Williams was convicted of rape and armed robbery (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1, 18—2) and sentenced to concurrent terms of 15 years' imprisonment for each offense. He raises the following pertinent issues for our review: (1) whether the trial court erred in admitting into evidence the victim's pretrial and in-court identifications of the defendant; (2) whether defendant's conviction for armed robbery is supported by evidence establishing beyond a reasonable doubt that the defendant utilized violence or threat of force in order to take the victim's property; (3) in the event that the armed-robbery conviction is reversed, whether defendant should receive a new sentencing hearing based solely upon the rape conviction. For the reasons set forth

more fully below, we affirm the defendant's conviction of rape, reverse the conviction of armed robbery, reverse the sentence imposed on the rape conviction, and remand the cause to the trial court for a new sentencing hearing based solely upon the defendant's conviction of rape.

BACKGROUND

Defendant was convicted of the rape and armed robbery of a woman in the city of Chicago on June 24, 1979, shortly after midnight. Evidence produced below established that on the night of June 23, the victim and her fiance went to pick up the victim's child from the victim's mother, who had watched the child for the evening. Because the elevator in the building was not serviceable, the victim and her fiance walked up the stairs to the 12th floor, on which the apartment of the victim's mother was located. They later descended the stairs to exit the building. As they reached the third floor, the victim realized that she had left her purse in her mother's apartment and again walked upstairs to her mother's apartment while her fiance and the baby went to the car to wait for her.

When she reached the 12th floor, the victim saw a man standing in the hallway approximately 5 to 10 feet away from her. The lighting conditions in the hallway were good and the victim saw the man's face for approximately two or three seconds. She noticed that he was wearing a black leather jacket and had a length of clothesline wrapped around his hand. As she walked down the hallway towards her mother's apartment, the victim passed this man, looked back, and noticed that he was looking at her. After looking back, the victim turned her face toward the direction of her mother's apartment. The man then grabbed her from behind, clamped one hand over her mouth, put a knife to her neck and stated, "Shut up or I'll kill you."

At knifepoint, the victim was pulled backwards to the stairwell where her assailant took her down three flights of stairs to the ninth floor. The victim was dragged down the hallway to the ninth-floor laundry room. She heard the assailant fumbling with some keys before he opened the laundry-room door. Once he had opened the door, he pushed her inside the laundry room. The room was dark. When the victim asked not to be killed or injured and mentioned that she had a child, her assailant again threatened to kill her if she did not remain silent. The victim's hands were tied in front of her with the attacker's clothesline, and she was gagged and blindfolded with pieces of clothing torn from her body by her assail-

ant. After ripping the remaining clothing from her body and threatening again to kill her, he sexually assaulted and raped the victim.

After the rape, the assailant remarked that he had dropped his knife case and that he "should kill [the victim] now." He then turned on the light in the room in an apparent attempt to locate the case and told the victim to count to 100 before she left the room. He then untied the victim's hands and left the room.

The victim took off her blindfold, removed the gag from her mouth, put on her clothing and ran downstairs to her fiance's car where she waited for his return. The fiance had gone to look for her on the 12th floor, where he discovered the victim's shoes and a black knife holder inscribed with the name "Buck." A short time later, the victim was rejoined by her fiance and a Chicago police department officer. She was bruised, her eyes were swollen, and she was crying and screaming hysterically. She told her fiance that she had been tied up and raped at knifepoint by a man wearing a black leather jacket.

The defendant was arrested in the stairway of the building shortly thereafter by officers of the Chicago police department. At the time of his arrest, he was wearing a black leather jacket, and had in his possession a piece of rope, the victim's necklace, a set of keys, one of which the police determined opened the laundry room in the building where the attack occurred, a black-handled knife inscribed with the name "Buck," and his high school identification card bearing his photo.

After the victim had gone to her mother's apartment so that she could dress and obtain her purse, she was taken to a Chicago police station where she was interviewed by Officer Kutz of the Chicago police department for the purpose of attempting to have her identify the property which Officer Kutz had recovered from the defendant at the time of his arrest. The victim immediately identified her gold necklace. She stated that she did not realize it was missing until she saw it at the police station. The victim also identified the rope taken from the defendant as that used to bind her hands, and that which she had seen wrapped around her assailant's hands prior to her abduction on the 12th floor.

The circumstances surrounding the victim's viewing of the defendant's identification card are disputed. It is clear, however, the she saw the card and recognized the person in the photograph as her attacker.

Later the same day, the victim and her fiance returned to the police station to view a five-man lineup which included the defend-

ant. The fiance had spoken to the victim before the lineup and told her that he had seen the defendant when he was arrested, but did not tell the victim what the defendant looked like or assist her in her attempts to identify her attacker in the lineup. The defendant was wearing a light tan colored cloth jacket in the lineup, and was identified by the victim.

Following defendant's arrest, defendant was questioned by a detective of the Chicago police department and an assistant Cook County State's Attorney. After being advised of his *Miranda* rights, the defendant stated that he understood his rights and wished to give his version of what occurred on the night in question. According to the testimony of the detective who was present during interrogation, defendant provided three versions of the events immediately prior to his arrest. Each of them was conflicting and exculpatory. The defendant's statements were never reduced to writing.

Defendant was subsequently formally charged with the rape and armed robbery of the victim. His motion to quash his arrest was allowed by the trial court; this order was later reversed by this court on appeal and the cause remanded for further proceedings. (*People v. Williams* (1981), 95 Ill. App. 3d 1201 (Rule 23 opinion).) On remand, the defendant filed a motion to suppress the victim's identification. The motion was based upon the assertion that the identification was the result of impermissive suggestion initiated by Officer Kutz when he allegedly showed the victim the defendant's high school photo identification card before the victim identified the defendant in the lineup. The trial court denied the motion following a hearing.

Defendant testified on his own behalf at trial and gave an exculpatory explanation for his presence in the building at the time of the assault that conflicted in part with his previous exculpatory statements during interrogation by Chicago authorities. The jury found the defendant guilty of both rape and armed robbery. After a hearing in aggravation and mitigation, the trial court sentenced the defendant to serve concurrent 15-year prison terms for each conviction. Defendant's timely appeal followed.

OPINION

I

Defendant argues that the trial court's admission into evidence of the victim's identification at trial was reversible error. Specifically

he claims that the victim's viewing of the defendant's identification card at the police station following the rape and armed robbery was impermissibly suggestive, such that admission into evidence of her later identifications of the defendant violated due process and deprived him of a fair trial.

Evidence at trial established that the victim was interviewed by Officer Kutz of the Chicago police department on the morning of the assault in order to identify property taken from the defendant upon his arrest. Both Officer Kutz and the victim testified that Officer Kutz brought the items recovered from the defendant into the interview room in his hat, took them out of his hat and placed most of the items in front of the victim for her inspection, but moved the identification card away from the victim to the far end of the table. The card was approximately 4 feet away from the victim. According to Officer Kutz, after the victim recognized her necklace, she looked at the far corner of the table, saw the identification card and stated "That's the guy that raped me." However, the victim testified that after she identified her property, Officer Kutz picked up the identification card and asked her whether the picture was that of the man who had raped her. She also testified that, without any prompting from Officer Kutz, she looked over to the section of the table where the card was lying, and immediately stated that the man pictured in the identification card was the person who had raped her.

Defendant argues that this evidence shows that the victim identified the defendant under suggestive circumstances that vitiate her later identifications of him at the police lineup and in court at trial. We conclude that the victim's identification of the defendant at the police lineup and in court was reliable, even if suggested by the photo, because it was based upon her memory of the events at the time of the crime.

Where an identification procedure is suggestive, the victim's identification of the defendant is nevertheless reliable, and thus admissible, where it is established "by a clear and convincing showing, based on the totality of the surrounding circumstances, that 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' [Citations.]" (*People v. McTush* (1980), 81 Ill. 2d 513, 520, 410 N.E.2d 861.) In *People v. Cohoon* (1984), 104 Ill. 2d 295, 300-01, 472 N.E.2d 403, the court delineated the proper scope of inquiry regarding whether the totality of the circumstances demonstrated that the victim's identification was reliable:

"The factors to be considered in determining whether, under

the totality of the circumstances, the identification was reliable, even though the identification procedure was suggestive, include the witness' opportunity to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of her prior description, her degree of certainty, and the time elapsed between the crime and the identification. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382."

The record establishes that the victim viewed her assailant twice under good lighting conditions. Upon returning to the 12th floor to retrieve her purse, the victim initially noticed the defendant standing in the hallway approximately 5 or 10 feet away from her. After walking toward her mother's apartment, the victim purposely looked back to observe the defendant, and saw him looking at her. In order to establish that a victim had an adequate opportunity to view the offender so that a positive identification could be made, it is not required that the conditions be perfect or that the time for observation be prolonged. (*People v. Davis* (1982), 104 Ill. App. 3d 1027, 1030-31, 433 N.E.2d 1011; *People v. Williams* (1981), 96 Ill. App. 3d 958, 961-62, 422 N.E.2d 199.) Under the circumstances presented here, we cannot say that the victim had such an insufficient time to adequately observe her assailant that her later identifications of him in the police lineup and in court were unreliable as a matter of law. See *People v. Hernandez* (1984), 121 Ill. App. 3d 449, 455, 459 N.E.2d 1013; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 69, 405 N.E.2d 1121, *appeal denied* (1980), 81 Ill. 2d 597.

■ The defendant points out that the victim was not able to provide the police with any details beyond the fact that her assailant was wearing a black leather jacket, that at trial she only added the detail that the man was approximately her height, and that she never stated in her description that the attacker had a beard and moustache (which the defendant had). We note, however, that the victim positively and clearly identified the defendant at the lineup on the same day that the offense occurred without any assistance from her fiance or the police, despite the fact that the defendant was no longer wearing the same clothes he had been wearing at the time of the rape and when arrested. " '[P]recise accuracy in description of the offender by an identifying witness is not a necessity.' [Citations.]" (*People v. Rosa* (1981), 93 Ill. App. 3d 1010, 1016, 418 N.E.2d 124, *cert. denied* (1982), 455 U.S. 952, 71 L. Ed. 2d 668, 102 S. Ct. 1457.) An omission of detail does not destroy the validity

of an identification but rather goes to the weight of the testimony and is to be evaluated by the trier of fact. (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 709, 466 N.E.2d 640, *appeal denied* (1984), 101 Ill. 2d 574; *People v. Bibbs* (1981), 101 Ill. App. 3d 892, 897, 428 N.E.2d 965.) Defendant's claim that the victim's identification omitted certain facial characteristics was heard and rejected by the jury in the instant cause. Based upon this record, we are unable to conclude that the victim's identification was unreliable, rendering the admission into evidence of her subsequent identifications of the defendant reversible error.

## II

■ Defendant argues that the evidence produced at trial did not prove that he committed armed robbery. Specifically, he contends that there is nothing in the record to establish that he used force or a threat of violence as the means to take the victim's necklace. Because there is no evidence to prove how or when the defendant came into possession of the victim's necklace, or to show that the defendant demanded money or any other property from the victim, we determine that defendant was not proved guilty beyond a reasonable doubt of armed robbery, and reverse his conviction for this offense.

■ Armed robbery is defined as the commission of robbery while armed with a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 18—2(a).) Robbery is defined as the taking of "property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(a).) Thus in order to sustain a conviction of armed robbery, there must be proof that the defendant used force or the threat of force in order to remove property within the victim's immediate proximity or control. See *People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209; *People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174, *cert. denied* (1983), 461 U.S. 944, 77 L . Ed. 2d 1302, 103 S. Ct. 2121; *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289; *People v. Gibson* (1985), 137 Ill. App. 3d 330, 484 N.E.2d 858, *appeal denied* (1985), 111 Ill. 2d 558; *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074, *overruled on other grounds, People v. Pettit* (1984), 101 Ill. 2d 309, 312-13, 461 N.E.2d 991.

Our careful scrutiny of the evidence produced at trial indicates that there is no evidence to show that the defendant took the victim's necklace from her person, or her immediate area of control, ei-

ther before, during, or after the sexual assault. The victim was unable to testify at what point in time she was no longer in possession of the necklace, much less at what point the defendant took the necklace from her. In fact, she was not aware that she no longer was wearing the necklace until she saw it during her interview at the police station. As a result, we can only speculate whether the defendant took the necklace from the victim at some point during the course of the assault, or whether he found it on the stairway before the rape had occurred. Under these circumstances, we cannot conclude that the defendant was proved guilty beyond a reasonable doubt of the armed robbery of the victim. Accordingly the conviction for that offense must be reversed.

### III

■ Because we reverse the armed robbery conviction, and because it appears that the trial court may have been influenced by the armed-robbery conviction in imposing its sentence for rape, we reverse the sentence imposed on defendant on the rape conviction and remand for resentencing on that rape conviction. See *People v. Alejos* (1983), 97 Ill. 2d 502, 513, 455 N.E.2d 48; *People v. Conover* (1981), 84 Ill. 2d 400, 405, 419 N.E.2d 906.

For the reasons stated above, the defendant's conviction of rape is affirmed, his conviction of armed robbery is reversed, the sentence imposed for defendant's conviction of rape is reversed, and the cause is remanded for resentencing on the rape conviction.

Affirmed in part, reversed in part, and remanded for resentencing.

LINN, P.J., concurs.

JUSTICE JIGANTI, dissenting:

I respectfully dissent from the reversal of the armed-robbery conviction. To be convicted of armed robbery, the statute provides that while a defendant is armed with a dangerous weapon, he "takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(a).) The defendant argues that there is no evidence that force was exerted against the complainant for the specific purpose of taking her property. In support of the contention the defendant relies on the case of *People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174. In *Tiller* the victim was murdered in a store

and the defendant was convicted of the murder and of armed robbery in the taking of a mail-truck Jeep that was parked nearby and which contained mail. The court reversed the armed-robbery conviction on the basis that "there is no evidence to show that the force exerted against [the victim] *was for the purpose of depriving [the victim] of the mail truck or the mail in it.*" (Emphasis added.) 94 Ill. 2d 303, 316, 447 N.E.2d 174.

In the case at bar, the majority states that they have carefully scrutinized the evidence and have found that there is no evidence to show that the defendant took the victim's necklace from her person or her immediate area of control, either before, during, or after the sexual assault. I do not believe that the taking of the necklace is the issue raised by the defendant. As the defendant states in his brief, his contention is that the force that was exerted against the victim was for the purpose of rape and not for the purpose of taking the victim's property. The defendant explains that the evidence dictates the conclusion that the necklace was taken as an afterthought, subsequent to the rape and without the complainant being in any way aware of it. Consequently, the defendant argues, the force was not for the purpose of depriving the victim of her property and, therefore, he cannot be convicted under the statute for armed robbery.

The *Tiller* case upon which the defendant relies, however, is distinguishable from the case at bar. In *Tiller* the evidence was insufficient to draw the conclusion that the force was for the purpose of taking the Jeep. When the force was used to murder the victim, there was no evidence from which it could have been inferred that the force used was also intended by the defendant to be used in the taking of the Jeep. There is no suggestion in the *Tiller* opinion that the defendant even knew that there was a Jeep. In this case the evidence is abundant for the jury to infer that during the rape the necklace was taken. Unlike *Tiller*, the force used here accomplished a dual purpose, rape and robbery. To gain some perspective, if the facts were varied slightly and it appeared that the defendant intended to rob the victim and as he accomplished the robbery by taking the necklace he, as an afterthought, raped the victim, it could not seriously be contended that there was no evidence of force necessary to convict the defendant of rape. I would affirm the armed-robbery conviction.