THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW WINSTON, Defendant-Appellant.

Second District   No. 2—86—0019

Opinion filed September 16, 1987.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Following a jury trial, the defendant, Andrew Winston, was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) and sentenced to six years' imprisonment. The following evidence was presented at trial.

Shahud Haque testified that at approximately 5 a.m. on June 4, 1985, a man came into the store portion of the gas station Haque managed, pulled out a gun, and announced a robbery. Haque identified defendant as the gunman. The only other person in the store at the time of the robbery was Floyd Nelson, a regular customer who had been there about an hour playing video games. Haque said Nelson had also been in the store earlier that night playing the games. He testified that Nelson behaved suspiciously, leaving when a customer entered and returning after the customer had left. Haque stated that the gunman walked past Nelson, without drawing his weapon, to the counter where Haque stood, but then ordered both Haque and Nelson to lie down on the floor behind the counter and took both their wallets. He also took money from the cash register, some bank bags containing money and receipts, some cartons of cigarettes and a cigar box containing supplies and business cards. He then left the store. A total of about $600 in cash was taken. Haque said that Nelson started to leave after the robbery and had to be persuaded to remain to talk with police.

Floyd Nelson was apparently called as a court's witness and was cross-examined by both the prosecutor and the defense attorney. Nelson admitted that he has a criminal record and was on probation for burglary at the time of this robbery. He testified that in June 1985, he was living at the home of Michael Thomas, less than a block from Haque's gas station. He had known the defendant a couple of years and had met him through Thomas. He said that on June 3, 1985, the evening before the robbery, he was with a crowd of people at Thomas' house, where he heard defendant and Thomas openly discuss robbing the station that night. They asked Nelson to participate, but he refused. Nelson admitted that he nevertheless went to the station twice that night—once at about 2 a.m. to challenge someone to a video game, and again before going to work at what he says must have been about 6 a.m. He denied having gone in and out when customers entered and explained his presence there in spite of defendant's plans by stating that Thomas and defendant "tried to psyche me out and say they wasn't doing it since I told them I wouldn't get involved." He explained that he stopped at the station every morning to get enough gas to make it to work and back. He said he had been in the store portion of the station playing video games for a few minutes when the gunman entered. He testified that he did not see the gunman come in but that his voice sounded familiar. He "glanced" at the gunman, but saw "mainly the gun," and insisted that he recognized the gunman only by voice and build. At one point in his testimony, he

referred to the gunman as "she." After reviewing an earlier statement he had made to police, he said that the defendant, Andrew Winston, had committed the armed robbery.

Nelson stated that he voluntarily remained to speak with police. He did not tell them that he knew the gunman or where they could find him because he feared for his life. After the police left the station, Nelson said he returned to Thomas' house and found defendant there with Thomas' girlfriend. The defendant had the bank bags and other items taken from the station and had "quite a bit of the money on him." He stated that defendant returned his wallet to him and offered to give him a share of the money taken. Nelson refused. Defendant remained there for an unspecified length of time and then left in a cab. Nelson stated that there was no phone at Thomas' residence and defendant must have called the cab from the house next door.

Nelson went to the police on June 10, six days after the robbery. He named the defendant as the gunman and gave the police two bank bags, a business card file, and some of Haque's identification cards. Haque identified the items at trial as among those taken by the gunman. Nelson testified that his girlfriend found the items. After reviewing the statement he made to police on June 10, however, he recalled that he himself had found the items. He admitted that he went to the police at least in part because he was afraid they might charge him with the crime. However, he later stated that fear of prosecution had not been his reason. He stated he was given $40 by one of the officers, but that the money was a loan and was not paid in exchange for information. He admitted that he has not repaid the officer.

On June 14, based on the information Nelson gave them, police arrested defendant and placed him in a lineup with four other men. Haque viewed the lineup and identified defendant as the gunman.

Defendant testified that in June 1985, he had been living at the home of Modelia Cook for about a month. He stated that he knew Nelson well and had been to Haque's gas station with him several times, but had no knowledge of the robbery. He could not specifically recall June 4, 1985, but said that he must have been asleep at Cook's home that night, as she had a 12 o'clock curfew for him and her son.

Cook testified for the defendant. She stated that in the time defendant lived at her home, which included the night of the robbery, he had never violated her 12 o'clock curfew. She said she always knew when defendant came in as it was his habit to call up to her and ask if she needed anything. She said she would have known if he went out during the night because when anyone entered or left, her door

always squeaked loudly, and her two poodles always barked. Cook's son, who slept in the bedroom next to defendant's, gave virtually the same testimony.

Michael Costner also testified for the defendant. He stated that in September 1985 he was in a parked car "getting high" with Floyd Nelson and another man, who asked Nelson why he had set up the defendant. Costner said Nelson replied that he thought defendant was messing around with his girlfriend. Several defense witnesses testified that defendant has a good reputation for honesty. They also stated that defendant regularly wore either a brightly colored high school jacket or a leather jacket and had never seen him wear a sweatshirt or jacket of the type used in the robbery. The witnesses also stated that defendant did not own a car and his only means of transportation were his bicycle or his feet.

Additionally, the parties stipulated that Michael Thomas had in fact been in jail on the evening of June 3, 1985, the date that Nelson testified he overheard Thomas and defendant planning the robbery.

Defendant argues on appeal that: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court erred in failing to hold an *in camera* hearing to determine whether certain police reports were discoverable; (3) the court erred in refusing to issue a jury instruction regarding testimony given by an accomplice; and (4) the court erred in refusing the jury's request to review a transcript of the testimony without first informing defense counsel of the request.

■■ We will first review the sufficiency of the evidence. The only evidence linking the defendant, who has no prior criminal record, with this crime was Nelson's testimony and Haque's identification testimony. Defendant contends that Haque's original description of the gunman to police does not fit the defendant and was substantially inconsistent with that Haque gave at trial. He argues that Haque's greater certainty in identifying the defendant at trial than in identifying him in the lineup indicates that Haque experienced a "glimmer of recognition" at the lineup because he had seen defendant in his station with Nelson on other occasions, and that he erroneously convinced himself that defendant was the man who robbed him. Defendant contends that Haque's testimony was therefore vague and uncertain and cannot support a conviction.

We note initially that defendant is a black man who was 18 years old at the time of his arrest. He had a mustache and a pierced ear. Defendant and his witnesses testified that he has always worn a mustache and usually wears an earring. At the time of trial, he was 5 feet 5 inches tall and weighed 139 pounds. At the trial, Haque described

the gunman as a young black man, about 18 years old, and slightly taller than himself (Haque is 5 feet 4½ inches tall). He described the gunman as having worn a cotton jacket with a front pocket and attached hood, blue jeans, white sneakers and a black scarf which completely covered his hair. Haque said that he "could imagine," apparently because the scarf did not bulge, that the gunman's hair was very short (as was defendant's). He described the gunman's facial hair as a "slight mustache when the first mustache is coming in, like that real slight." Haque admitted at trial that he did not notice an earring or pierced ear, but insisted that each time police interviewed him he told them the gunman had a mustache, and that he never told them the man weighed 180 pounds. However, the police officer who interviewed Haque and Nelson immediately after the robbery testified that they said the gunman did not have a mustache and estimated his weight at 180 pounds. A second officer who interviewed Haque three days later testified that Haque described the gunman to him as clean-shaven and weighing approximately 180 pounds. In addition, when Haque identified defendant in the lineup he stated: "Number 5, I think," or "I think he's the man." Haque admitted using the phrase "I think," but stated it was merely a figure of speech, and that he had been sure the defendant was the gunman.

An identification is not rendered invalid simply because the witness did not describe the offender with complete accuracy. (*People v. Williams* (1986), 145 Ill. App. 3d 482, 488-89; *People v. Taylor* (1986), 143 Ill. App. 3d 252, 255.) Rather, discrepancies and omissions of detail affect only the witness' credibility and the weight to be given his testimony by the trier of fact. (*People v. Williams* (1986),145 Ill. App. 3d 482, 489; *People v. Taylor* (1986),143 Ill. App. 3d 252, 255; *People v. Goodman* (1982), 109 Ill. App. 3d 203, 217.) While Haque apparently misjudged defendant's weight by a full 40 pounds, our supreme court has recognized that few people are capable of accurately estimating another's height or weight. (*People v. Evans* (1962), 25 Ill. 2d 194, 201.) And the omission of facial hair in an initial description is generally considered to be only a "minor discrepancy." (*People v. Taylor* (1986), 143 Ill. App. 3d 252, 255; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 616-17 (listing cases in which inaccuracies in describing facial features have been held to be discrepancies affecting only the weight of the evidence).) Identifications are normally based on the witness' total impression and recollection of the offender—not on particular facial features or physical characteristics. (See, *e.g., People v. Nims* (1986), 156 Ill. App. 3d 115, 119; *People v. Shelby* (1984), 123 Ill. App. 3d 153, 165.) While a reviewing court will overturn a jury's

verdict of conviction where the evidence leaves "a reasonable doubt as to the guilt of the accused" (*People v. Gorney* (1985), 107 Ill. 2d 53, 61; see also *People v. Yates* (1983), 98 Ill. 2d 502, 518-19), we cannot conclude that such is the case here. Haque's initial description very accurately matched the defendant with respect to his age and height. More importantly, Haque identified defendant in a lineup only 10 days after the robbery. The lineup was not conducted in a suggestive manner, and Haque testified that he was certain both in court and when he made the initial identification that defendant was the gunman.

■ The jury heard and rejected defense counsel's argument that Haque recognized defendant only from earlier visits to his station. (See, *e.g., People v. Williams* (1986), 145 Ill. App. 3d 482, 489.) It was not obligated to accept his alibi evidence, even though presented by more witnesses, over Haque's identification testimony. (See *People v. Yates* (1983), 98 Ill. 2d 502, 525; *People v. Reed* (1980), 80 Ill. App. 3d 771, 781.) The record indicates that Haque's in-court identification of defendant was unequivocal, and the jury obviously accepted it. (See, *e.g., People v. Yates* (1983), 98 Ill. 2d 502, 525.) The cases cited by the defendant, in which courts have overturned convictions based on discrepancies in witness' descriptions or identifications, are distinguishable. In each of defendant's cases, the court concluded that the witness(es) did not have an adequate opportunity to observe the offender at the time the crime was committed. (See *People v. Marshall* (1966), 74 Ill. App. 2d 483, 485; *People v. McGee* (1961), 21 Ill. 2d 440, 441-42; *People v. Reese* (1973), 14 Ill. App. 3d 1049, 1056.) As discussed below, such was not the case here.

■ Defendant contends that Nelson was an accomplice and that his testimony must be entirely rejected because it lacked the "absolute conviction" of truth required by the Illinois Supreme Court in *People v. Ash* (1984), 102 Ill. 2d 485, 493. He argues that because there is no evidence that the jury disregarded the testimony, his conviction must be reversed. The "absolute conviction" standard used in *Ash*, however, applies only when the accomplice's testimony is uncorroborated. (102 Ill. 2d 485, 493.) We agree with defendant that Nelson's testimony, if uncorroborated, would have been wholly insufficient to remove all reasonable doubt of his guilt. However, "[w]here identification of the accused is at issue, the testimony of a single witness is sufficient to support a conviction, even in the presence of contradictory alibi testimony, provided the witness is credible and viewed the defendant under circumstances which would permit a positive identification." (*People v. Yates* (1983), 98 Ill. 2d 502, 525.) The State presented uncontroverted evidence that Haque's station was very well

lit, and that the gunman, with his face fully exposed, was within a few feet of Haque during the entire robbery. Haque testified that because he had been robbed four times before, he was determined to prosecute and concentrated on the gunman's face so that he could later make an identification. We must conclude that Haque had an excellent opportunity to observe the offender during the robbery. (See *People v. Carr* (1986), 149 Ill. App. 3d 918, 926-27.) Therefore, even if we entirely disregard Nelson's testimony as defendant urges, Haque's testimony alone was sufficient to support his conviction.

■■ ■ Because we find it dispositive of this appeal, we next address defendant's contention that the trial court erred in refusing his request for an instruction cautioning the jury with regard to testimony given by an accomplice. Defendant submitted a modified version of Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) (IPI Criminal 2d), which the court refused to issue. The Illinois Pattern Instruction provides:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal 2d No. 3.17.)

Defendant altered the language to make it applicable where the witness denies involvement but the evidence indicates that he was involved. We conclude the court's refusal to issue a cautionary instruction was reversible error.

A defendant is entitled to a cautionary instruction if the witness was an accomplice to the crime. (See *People v. Cobb* (1983), 97 Ill. 2d 465, 476; *People v. Robinson* (1974), 59 Ill. 2d 184, 191; *People v. Jackson* (1986), 145 Ill. App. 3d 626, 643.) For purposes of the instruction, "an accomplice is one who could himself have been indicted for the offense either as a principal or as an accessory." (*People v. Cobb* (1983), 97 Ill. 2d 465, 476.) If this test is met, the defendant is entitled to the instruction notwithstanding the witness' denial of involvement. See *People v. Hall* (1980), 81 Ill. App. 3d 322, 326; see also *People v. Cobb* (1983), 97 Ill. 2d 465.

In *People v. Cobb* (1983), 97 Ill. 2d 465, our supreme court held that the record contained sufficient evidence to support indictment of the witness notwithstanding her claims that she did not know about the planned robbery. The record in *Cobb* indicated that the witness was with the offenders before the crime, waited in the getaway car with the motor running during the crime, watched the offenders flee the scene, and then drove them away as they discussed their disap-

pointment with the amount of money they had received. She did not disclose her knowledge of the crime to police until three weeks later. (97 Ill. 2d 465, 476.) Nelson's actions here were similar. Nelson claimed to have been with defendant while defendant and another man planned the robbery. He was present at the scene at 5 a.m., and there was testimony that he behaved suspiciously there—leaving when customers entered and reentering after they had left. He then met with the defendant immediately after the robbery and was offered a share of the booty. He did not approach the police until one week later and then turned over to them items taken during the robbery which he claimed to have found. We conclude that Nelson's actions were at least as incriminating as those taken by the witness in *Cobb*, and that he could have been indicted for armed robbery. (See 97 Ill. 2d 465, 476-77.) He was, therefore, an accomplice, and the court erred in refusing to give a cautionary instruction regarding his testimony to the jury.

We find *People v. Harrison* (1982), 106 Ill. App. 3d 341, cited by the State, to be easily distinguishable. In *Harrison*, the witness testified that he, the defendant, and the victim had gone to the victim's home for a dice game. After the game, the defendant attempted to rob the victim and shot him when he resisted. (106 Ill. App. 3d 341, 343.) There was no evidence that defendant's actions were anything other than spontaneous. The witness' presence at the scene was therefore not incriminating. The only incriminating evidence presented in *Harrison* was the facts that the witness had not sought help for the victim and had washed his blood-stained clothes. He testified, however, that the defendant had threatened him. (106 Ill. App. 3d 341, 343-44.) While Nelson also claimed to have been threatened, his testimony indicates that the threats *caused him to approach police* and were *not* made by the defendant.

The State argues that any error resulting from the court's failure to give the instruction was harmless, because both attorneys attacked Nelson's credibility in closing arguments, with the prosecuting attorney urging the jury to accept it only to the extent that it corroborated Haque's. We cannot agree. The jurors were told that the instructions issued by the court contained the applicable law and were repeatedly warned that the attorneys' comments were only their interpretation of the testimony and should be disregarded in favor of the jury's own collective memory. The jury may well have concluded that it was to disregard counsels' comments entirely and rely exclusively on the instructions and the testimony. See, *e.g., People v. Cage* (1986), 146 Ill. App. 3d 726, 732.

The State's evidence in this case was minimal, consisting of a single reliable witness who identified defendant, and Floyd Nelson's fantastic account of the incident. There was no objective physical evidence linking the defendant to the crime, and he presented convincing alibi and character witnesses. Nelson's testimony consisted of very direct accusations and identifications of the accused both before and after the robbery, but he was inexplicably hesitant to say he looked at, saw, and recognized defendant during the robbery, and at one point referred to the gunman as "she." Because the jury may well have relied on Nelson's testimony to tip the balance in favor of conviction, we cannot conclude that the error was harmless. (See, *e.g.*, *People v. Hall* (1980), 81 Ill. App. 3d 322, 326.) We therefore reverse and remand this case for a new trial.

In light of our conclusion that defendant must be afforded a new trial, we find it unnecessary to consider his remaining contentions.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.