Sixth Division
September 5, 2008

No. 1-07-0718

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 05 CR 20332 |
| | ) | |
| DIMITRIUS THOMAS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Kevin M. Sheehan, |
| | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Defendant Dimitrius Thomas and codefendants Tyrone Sanders[1] and Jeremiah Johnson were charged with multiple felonies including home invasion, armed robbery and aggravated kidnaping from the March 2005 robbery of Tammie Allen and her children David Allen, Jr., Tamera Allen and Tyla Allen. Following a trial, the jury found defendant guilty of armed robbery, home invasion and aggravated kidnaping. The trial court subsequently sentenced defendant to 25 years for the home invasion and aggravated kidnaping of Tammie, 50 years for the home invasion, aggravated kidnaping and armed robbery of David, and 50 years for the aggravated kidnaping of Tamera and Tyla.

Defendant appeals, arguing that (1) the State failed to prove defendant guilty of home invasion because no one was present in the house when it was entered; (2) one of his convictions for home invasion must be vacated under the one-act, one-crime doctrine; (3) the trial court abused its discretion in sentencing defendant to an extended-term sentence of 50 years; and (4)

[1] Sanders was tried in a simultaneous bench trial with defendant, but is not a party to this appeal.

the mittimus must be corrected to reflect a conviction for armed robbery instead of armed violence.

The following evidence was presented at defendant's jury trial.

On March 10, 2005, Tammie Allen arrived at her home, located at 4515 South Leamington Avenue, with her children and parked in front of the house. David, age 11, and Tamera, age 7, walked to the side door while Tammie stayed in front of house as Tyla, age 5, played in the snow. David had his own key and went to unlock the door. As he was going into the house, two men approached them, later identified as codefendants Johnson and Sanders. Sanders came up behind David and Tamera while Johnson grabbed Tammie and Tyla.

The men forced the family into their home and cornered them in the kitchen. Tammie stood in front with Tamera and Tyla in the middle and David in the back. The men were armed with firearms. One of the men grabbed Tammie by the collar and demanded to know where the money was and threatened to "deaden her ass" when she said she did not know. Sanders then fired his gun into the kitchen floor. The men emptied Tammie's purse and took a cell phone and $6 from David.

Johnson forced Tammie to lead him around the house. They went into the Tammie and her husband's bedroom and Johnson began pulling clothes out of drawers. He asked what was under the mattress, and Tammie lifted it up. Defendant was called on his cell phone and asked to bring duct tape. When Johnson and Tammie returned to the kitchen, she saw a third man, wearing a blue hooded sweatshirt with the hood partially covering his head. The hooded man said, "Don't let that bitch see my face." Johnson then pushed Tammie into David's bedroom.

Johnson returned and put duct tape over her mouth and forehead, partially covering her eyes. Tammie's hands were bound behind her back by the tape. Eventually the tape was removed from Tammie's mouth and forehead.

Tammie was taken to the basement by Johnson and defendant. The men began "rambling" through the basement and kept asking for the money. They looked through storage bins and the washing machine and dryer. The wires were pulled out of the home's security system. Soon, Sanders yelled from upstairs that "it's a blue and white out here." The men ran up the stairs and out of the house. Tammie was able to release herself from the duct tape and called for her children.

During the police investigation, Tammie initially identified a person who "resembled" defendant, but did not affirmatively identify him. In April 2005, Detective Thomas Kampenga, who was investigating the robbery, learned that a search warrant had been served at 1910 North Sawyer and three handguns were recovered from that address. He had the bullet recovered from the Allens' kitchen floor compared with the recovered handguns. It was determined to be a match. Subsequently, Tammie met with Detective Kampenga, at which time she identified Johnson and defendant in a photographic array. A lineup was conducted later and Tammie again identified Johnson and defendant. David viewed the lineup separately from his mother, and he also identified defendant and Johnson. In June 2005, Tammie identified Sanders in a photographic array and later in a lineup. David also identified Sanders separately at a lineup.

A fingerprint was taken from the dryer, but it did not match defendant. No other suitable fingerprints were recovered from the house. Also, DNA analysis was performed on a cigarette

butt smoked by one of the men and left at the crime scene. However, the DNA profile did not match any of the men.

Johnson testified for the State and said that he pled guilty to home invasion in exchange for an 11-year sentence. All other charges were dropped against him. According to Johnson, he was told by a person called "Ball" about a place they could rob. Ball picked up Johnson with other men. Johnson identified one of the men as defendant but did not identify the other as Sanders. The men parked away from the house and waited for the family to come home. His testimony mostly corroborated the testimony of Tammie and David. Johnson stated that defendant took all the guns after they left.

Defendant rested without presenting any evidence. The State moved to dismiss all charges against Sanders. The jury found defendant guilty of armed robbery, two counts of home invasion, and four counts of aggravated kidnaping. The trial court sentenced defendant to 25 years for the home invasion and aggravated kidnaping of Tammie, 50 years for the home invasion, aggravated kidnaping and armed robbery of David, and 50 years for the aggravated kidnaping of Tamera and Tyla, all sentences to run concurrently.

This appeal followed.

First, defendant argues that the State failed to prove him guilty of home invasion because the evidence presented did not establish that people were present in the home when it was entered. When this court considers a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not our function to retry the defendant. People v. Hall, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)  Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); accord People v. Cox, 195 Ill. 2d 378, 387 (2001).  It is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.  Since defendant does not challenge the credibility of witnesses, but instead questions whether the uncontested facts were sufficient to prove the elements of home invasion, our review is *de novo*.  In re Ryan B., 212 Ill. 2d 226, 231 (2004).

Section 12-11(a)(3) of the Criminal Code of 1961 provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

* * *

(3) While armed with a firearm uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury

5

occurs[.]" 720 ILCS 5/12-11(a)(3) (West 2004).

Defendant contends the witnesses testified that they were seized by the offenders outside the house and forced into the home. According to defendant, these facts do not satisfy the home invasion statute because the home was empty prior to the entry of the victims with the offenders. Defendant relies on People v. Pettit, 101 Ill. 2d 309 (1984), as support. In Pettit, the defendants were engaged in a drug deal when they drew guns and demanded the address of the seller's supplier. The defendants forced the seller and another drug seller to go with them to the residence. Once there, they forced their way into the first-floor apartment of the supplier, who was not at home. An upstairs neighbor was there to babysit the supplier's son. The babysitter screamed and her boyfriend came downstairs from their unit. After a few hours, one of the defendants went upstairs to see if anyone was in the second-floor apartment. After finding it deserted, he ordered everyone upstairs into that apartment. While in that apartment, some fighting occurred and one of the victims was injured. The defendants were charged in the information for the home invasion of the second-floor apartment only. Pettit, 101 Ill. 2d at 310-12. The supreme court held that "[t]he statute specifically requires the presence of one or more persons to constitute a violation" and that at the time of the invasion of the second-floor apartment, "the dwelling was deserted." Pettit, 101 Ill. 2d at 313. However, the supreme court also concluded that the evidence failed to show that the defendants knowingly invaded the second-floor apartment where the evidence presented showed that the defendants did not know the house was divided into two apartments. Pettit, 101 Ill. 2d at 314.

Defendant's argument fails for two reasons. First, defendant is in error when he states

that all of the witnesses testified that they were outside of the house when they were seized. David testified at the time he was opening the door, he "saw a man behind [him] coming inside the gate." When asked by the State what happened when he saw the man, David stated that, "[he] was in the house and [he] turned the light on." David's testimony indicates that he was present in the house at the time of the entry. Any discrepancies in the testimony were a question for the jury. Further, defendant does not contest any of the testimony presented.

Second, even if David's testimony were insufficient to show presence in the house at the time of the entry, defendant's claim still fails. Although not cited by either party, the Fourth District in People v. Dall, 207 Ill. App. 3d 508 (1991), addressed the same argument presented by defendant, that is, a defendant is not proved guilty of home invasion when the victim is entering the house at the time of the attack. In that case, the victim was unlocking the door when someone grabbed her from behind and forced her into the house. Dall, 207 Ill. App. 3d at 514. The defendant also relied on Pettit as support, which the reviewing court found to be distinguishable.

> "Pettit's conviction for home invasion was reversed on appeal.
> Pettit and two others had invaded the first floor of a house which
> had been divided into two apartments. The residents of the
> upstairs apartment were baby-sitting for the downstairs residents.
> All of the evidence indicated Pettit and the other defendants were
> unaware of the fact that the house had been divided into two
> apartments. After waiting for the first-floor apartment dwellers to

7

return, Pettit took his hostages upstairs. He was charged with home invasion of the second-floor apartment. The supreme court affirmed reversal of the convictions, noting that no evidence indicated Pettit knew he was entering the 'dwelling of another' when he went upstairs." Dall, 207 Ill. App. 3d at 523.

The court then found that "[f]orcing a person into her own home and following that person into the home without authority satisfies the portion of the home invasion statute, that defendant, without authority, enters the dwelling place of another knowing that one or more persons are present." Dall, 207 Ill. App. 3d at 523-24.

We agree with the conclusion in Dall. Here, the defendants waited for Tammie and her children to come home. As David started to unlock the door, Johnson and Sanders approached the family and forced them into the kitchen where they were held at gunpoint. Even if David did not enter the house before one of the offenders, the simultaneous forced entry alongside the victim is sufficient to satisfy the home invasion statute. Therefore, the evidence supports the jury's finding that defendant entered the home when people were present.

Next, defendant asks this court to vacate one of his convictions for home invasion because there was only one criminal entry into the dwelling. The State agrees with defendant and concedes that we should vacate one conviction as in accordance with People v. Cole, 172 Ill. 2d 85 (1996). We agree. The supreme court in Cole held that a single entry will support only one conviction under the home invasion statute, regardless of how many people are inside the dwelling. Cole, 172 Ill. 2d at 101-02. Since one count of home invasion was against a person

8

under the age of 12 years of age (David) and the other was not (Tammie), we vacate defendant's conviction for count I, home invasion against Tammie. See People v. Garcia, 179 Ill. 2d 55, 71 (1997) ("When multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated").

Defendant next contends that the trial court abused its discretion when it sentenced defendant to an extended-term sentence of 50 years for an incident in which no one suffered any injuries and that lasted only a few minutes. The State responds that defendant was sentenced within the statutory range, he had numerous prior convictions with the opportunity for rehabilitation, and he discounts that the crime committed against a woman and her three small children.

"It is well established that a trial court has broad discretionary authority in sentencing a criminal defendant." People v. Evans, 373 Ill. App. 3d 948, 967 (2007). "An appellate court typically shows great deference to a trial court's sentencing decision since the trial court is in a better position to decide the appropriate sentence." Evans, 373 Ill. App. 3d at 967. "Accordingly, a trial court's sentencing decision is not overturned absent an abuse of discretion." Evans, 373 Ill. App. 3d at 967.

"The Illinois Constitution mandates the balancing of both retributive and rehabilitative purposes of punishment." Evans, 373 Ill. App. 3d at 967; see also Ill. Const.1970, art. I, §11. "The trial court is therefore required to consider both the seriousness of the offense and the likelihood of restoring the offender to useful citizenship. Evans, 373 Ill. App. 3d at 967.

9

However, "[a] trial court is not required to give greater weight to the rehabilitative potential of a defendant than to the seriousness of the offense." People v. Govea, 299 Ill. App. 3d 76, 91 (1998). "In determining an appropriate sentence, the trial judge is further required to consider all factors in aggravation and mitigation which includes defendant's credibility, demeanor, general moral character, mentality, social environments, habits, and age, as well as the nature and circumstances of the crime." Evans, 373 Ill. App. 3d at 967.

Here, defendant was convicted of home invasion, armed robbery and aggravating kidnaping against David, aggravated kidnaping of Tammie, and the aggravated kidnaping of Tamera and Tyla. All of these convictions are Class X felonies. See 720 ILCS 5/12-11(c),18-2(b), 10-2(b) (West 2004). Class X felonies are subject to a sentence of 6 to 30 years. 730 ILCS 5/5-8-1(a)(3) (West 2004).

Further, the trial court was entitled to sentence defendant to an extended term of 30 to 60 years if any of the aggravating factors in section 5-5-3.2(b) of the Unified Code of Corrections were present. 730 ILCS 5/5-8-2(a)(2) (West 2004). Two aggravating factors were present in defendant's case: he had prior felony convictions and he committed felonies against children under 12 years of age. 730 ILCS 5/5-5-3.2(b)(1), (b)(4)(i) (West 2004). According to defendant's presentence investigation (PSI) report, defendant had previously been convicted of six felonies from 2000 to 2004. These prior convictions included three convictions for possession of a controlled substance, one for delivery of cannabis on school grounds, and two convictions for aggravated unlawful use of a weapon. Defendant fails to acknowledge his prior felony convictions in his brief as an aggravating factor to warrant an extended-term sentence.

Instead, defendant focuses on the brevity of the crime and the fact that none of the victims were physically harmed. We find defendant's attempts to minimize the nature of these crimes to be without merit. Defendant cites to the decision in People v. Juarez, 278 Ill. App. 3d 286 (1996), as support for his argument that the crime only lasted a few minutes and no one was harmed. However, the circumstances in Juarez are vastly different from those in the instant case. In Juarez, the defendant received a 14-year sentence for aggravated discharge of a firearm, one year less than the maximum for a Class 1 felony. Juarez, 278 Ill. App. 3d at 294. There, the defendant fired a gun at an occupied car as it drove past him and no one in the car was injured. Juarez, 278 Ill. App. 3d at 288. This case is clearly distinguishable from the instant case.

At sentencing, the trial court thoroughly discussed the serious nature of defendant's crimes.

> "This case is again a very serious case. For the children of David — for the children of David Allen and Tamera Allen, this is nothing less than a nightmare. This is nothing less than a mother and her offspring returning home to what is supposed to be a place of safety, a place of security, and a place of happiness. You know, metaphorically speaking, it should be an oasis away from all that's bad. However, the defendant, Mr. Dimitrius Thomas, and a number of cohorts decided to upset that particular place of safety and decided to inject a nightmare into the lives of Miss Allen and her [three] children in this case. Not for a quick crime of stealth or

11

quick crime of violence or something is taken, someone is knocked down and the individuals or perpetrators run away, but to sit in someone's home, in the sanctity of that home, and over a period of time literally, mentally torture the occupants of that home who did nothing more than come from wherever they were lawfully before that.

The sentence the Court going to impose in this case is given to Mr. Dimitrius Thomas, and it's needed to deter others from engaging in this type of conduct.

The violence, not physical violence or manifestation of that is so much apparent in this case, but the mental anguish and the sheer torture, the psychological torture of having your home invaded and your children put in harm's way is, in this Court's eyes, some of the most unacceptable behavior under the statutory scheme in the state of Illinois."

The trial court stated that its sentencing decision was based on the evidence at trial, defendant's PSI report, the evidence in aggravation and mitigation, the victim impact statement, and the arguments of counsel. The court specifically noted defendant's six prior convictions and noted that, "Lessons learned in the penitentiary have not been learned well by Mr. Dimitrius Thomas in this case." The court went on to impose concurrent sentences for all the convictions with 50-year extended sentences for the crimes against the Allen children and a 25-year sentence for the aggravated kidnaping of Tammie Allen. All of the sentences are within the statutory

12

range.   We find that the trial court considered all relevant factors including defendant's rehabilitative potential along with the need for punishment.  Given defendant's criminal history and severity of the crimes committed against a mother and her three children under the age 12, we hold that the trial court's sentence was not an abuse of discretion.

Finally, defendant asks this court to amend the mittimus to reflect a conviction for armed robbery instead of armed violence.  The State concedes that the mittimus should be corrected, but points out that, in addition to defendant's claim of error, the mittimus lists the counts incorrectly. The mittimus reflects that count XVII is a conviction for aggravated kidnaping and count XXIV is a conviction for armed violence.  This is incorrect.  According to the indictment, count XVII was for the charge of armed robbery and count XXIV was for aggravated kidnaping.  Count XXXI was armed violence, and the State nol-prossed that charge at the start of the trial.  Under Supreme Court Rule 615(b)(1), this court has the authority to order a correction of the mittimus. 134 Ill. 2d R. 615(b)(1).  Therefore, we order the mittimus to reflect a conviction for count XVII for armed robbery and a conviction for count XXIV for aggravated kidnaping.

For the foregoing reasons, we affirm defendant's conviction for home invasion of a person under 12 years of age (count III) and sentence.  We vacate defendant's conviction of home invasion (count I) and order the mittimus corrected to reflect a conviction for armed robbery.

Affirmed in part and vacated in part; cause remanded with directions.

O'MALLEY, P.J. and JOSEPH GORDON, J., concur.