2025 IL App (1st) 240908-U

SECOND DIVISION
December 9, 2025

No. 1-24-0908

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05CR20332 |
| | ) | |
| DIMITRIUS THOMAS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred in dismissing defendant's postconviction petition at the second stage of proceedings where he made a substantial showing of actual innocence. We remand for a third stage evidentiary hearing.

¶ 2    Defendant Dimitrius Thomas[1] appeals the trial court's second stage dismissal of his successive postconviction petition, arguing that he set forth a substantial showing of: (1) actual innocence based on newly discovered evidence from two alleged accomplices through their

_____

[1] Defendant's name also appears as Demetrius Thomas in the record.

affidavits which established defendant was not involved in the crime; and (2) postconviction counsel was unreasonable for failing to attach a verification affidavit to the amended successive postconviction petition.

¶ 3    Following a jury trial, defendant was convicted of the armed robbery, home invasion and aggravated kidnaping of Tammie Allen and her children David Allen, Jr., Tamera Allen, and Tyla Allen. We outline the evidence presented at defendant's trial as necessary for our disposition of this appeal. A full discussion of the evidence presented at defendant's trial was set forth in *People v. Thomas*, 384 Ill. App. 3d 895 (2008).

¶ 4    On March 10, 2005, Tammie Allen arrived at her home, located at 4515 South Leamington Avenue, with her children and parked her car in front of the house. David, age 11, and Tamera, age 7, walked to the side door while Tammie stayed in front of the house as Tyla, age 5, played in the snow. David had his own key and went to unlock the door. As he was going into the house, two men approached them, later identified as codefendants Jeremiah Johnson and Tyrone Sanders. Sanders came up behind David and Tamera while Johnson grabbed Tammie and Tyla.

¶ 5    The men forced the family into their home and cornered them in the kitchen. The men were armed with firearms. One of the men grabbed Tammie by the collar and demanded to know where the money was and threatened to shoot her when she said she did not know. Sanders then fired his gun into the kitchen floor. The men emptied Tammie's purse and took a cell phone and $6 from David. Johnson forced Tammie around the house while Johnson went through the bedrooms looking for money.

¶ 6    David testified that Sanders called someone on Sanders's cell phone and told that person to bring duct tape. A third man then arrived at the house with duct tape. When Johnson and

Tammie returned to the kitchen, she saw the third man, wearing a blue hooded sweatshirt with the hood partially covering his head. Tammie identified the third man in court as defendant. Defendant said, "Don't let that b**** see my face." Johnson then pushed Tammie into David's bedroom. Johnson returned and put duct tape over her mouth and forehead, partially covering her eyes. Tammie's hands were bound behind her back by the tape. Eventually the tape was removed from Tammie's mouth and forehead. Tammie admitted that she was nearsighted and was not wearing her glasses during the commission of the offense.

¶ 7      Johnson and defendant took Tammie to the basement, and the men began "rambling" through the basement and kept asking for the money. Sanders yelled from upstairs that there was "a blue and white out here." The men ran up the stairs and out of the house. Tammie was able to release herself from the duct tape and called for her children.

¶ 8      During the police investigation, Tammie initially identified the photograph of a person who "resembled" defendant, but defendant's photograph was not included in this photo array. Later, however, Tammie met with Detective Thomas Kampenga and she identified both Johnson and defendant in a photographic array. In a subsequent lineup, Tammie again identified Johnson and defendant. Detective Kampenga testified that Tammie did not tell him that she was able to get a full facial view of defendant, she told him that she observed a side profile of his face. David viewed the lineup separately from his mother, and he also identified defendant and Johnson. In June 2005, Tammie identified Sanders in a photographic array and later in a lineup. David also identified Sanders separately at a lineup. At trial, David testified he did not think he would recognize the offenders and was unable to identify defendant in court as one of the offenders.

¶ 9      In April 2005, Detective Kampenga learned that a search warrant had been served at an apartment located at 1910 North Sawyer. Legal documents listing defendant's name and address

3

were found at the location. Defendant was not present at the time of the search. Officers found three handguns in a hallway closet, which they recovered. Detective Kampenga had the bullet recovered from the Allens' kitchen floor compared with the recovered handguns. Forensic testing determined that the bullet recovered from the kitchen floor of the Allen home was fired from one of the firearms recovered from defendant's apartment.

¶ 10     A fingerprint was taken from the dryer in the Allen house, but it did not match defendant. No other suitable fingerprints were recovered from the house. Also, DNA analysis was performed on a cigarette smoked by one of the men and left at the crime scene. However, the DNA profile did not match any of the men.

¶ 11     Johnson testified for the State and said that he pled guilty to home invasion in exchange for an 11-year sentence. All other charges against him were dropped. According to Johnson, he was contacted by a person he knew as "Ball[2]," about a place they could rob. Ball picked up Johnson with two men known as "Jamal" and "Marcus." Johnson identified defendant in court as the person he knew as "Jamal." The men parked away from the house and waited for the family to come home. His testimony mostly corroborated the testimony of Tammie and David. Johnson stated that defendant took all the guns after they left.

¶ 12     The defense rested without presenting any evidence. Following deliberations, the jury found defendant guilty of armed robbery, two counts of home invasion, and four counts of aggravated kidnaping. The trial court subsequently sentenced defendant to concurrent sentences of 25 years for the home invasion and aggravated kidnaping of Tammie, 50 years for the home

---

[2] During a sidebar, "Ball" was identified as Kenya Henry, who later provided an affidavit for the successive postconviction petition on appeal.

invasion, aggravated kidnaping and armed robbery of David, and 50 years for the aggravated kidnaping of Tamera and Tyla.

¶ 13    On direct appeal, defendant contended the State failed to prove him guilty of home invasion because no one was present when the codefendants entered the residence; one of his convictions for home invasion should have been vacated under the one-act, one-crime doctrine; the trial court abused its discretion in sentencing defendant to an extended-term sentence of 50 years; and the mittimus should have been corrected to reflect a conviction for armed robbery instead of armed violence. This court affirmed defendant's conviction for home invasion of a person under 12 years of age and sentence but vacated one count of home invasion and ordered the mittimus corrected to reflect an armed robbery conviction. See *Thomas*, 384 Ill. App. 3d at 903.

¶ 14    Defendant filed his initial postconviction petition, prepared by retained counsel, in July 2009. The petition alleged multiple claims of ineffective assistance of counsel and a claim of actual innocence. In his actual innocence claim, defendant asserted codefendant Johnson provided statements to defendant's postconviction counsel indicating that defendant was not involved in the home invasion. An unsworn, unsigned affidavit was attached to the postconviction petition stating that Johnson testified against defendant because the State told him he would get up to 60 years if he did not and he felt he had no choice. The affidavit further stated that defendant did not participate in the home invasion. Postconviction counsel provided his own affidavit stating he spoke with Johnson over the phone about the statements made in Johnson's unsigned affidavit. Counsel further stated an affidavit was mailed to Johnson in prison but was not returned by the time the postconviction petition was filed. In September 2009, the trial court dismissed defendant's postconviction petition as frivolous and patently without merit.

5

¶ 15    On appeal, this court affirmed the summary dismissal of defendant's petition. *People v. Thomas*, No. 1-09-2907 (2011) (unpublished order under Supreme Court Rule 23). Specifically, we held that the record on appeal failed to present any newly discovered evidence to support a claim of actual innocence and Johnson's unsigned, unsworn affidavit was insufficient to raise this claim. *Id*. at 16.

¶ 16    In January 2014, defendant filed his *pro se* successive postconviction petition. The petition was docketed, and counsel was appointed to represent defendant. In July 2017, defendant, through counsel, filed his amended successive postconviction petition. He alleged multiple claims of ineffective assistance of trial and appellate counsels, as well as the unreasonable assistance of his initial postconviction counsel, and a claim of actual innocence with a related perjury claim. Defendant's actual innocence claim was premised on affidavits from Johnson, Kenya Henry, Kenyon Slater, and Alicia Stewart. Defendant asserted that the affidavits from Johnson, Henry, and Slater were newly discovered evidence, material, noncumulative, and of a conclusive character sufficient to raise the probability that they would likely change the outcome of the trial.

¶ 17    In his December 2016 affidavit, Johnson stated that he was defendant's codefendant and pled guilty to home invasion in exchange for a sentence of 11 years. According to Johnson, when he was arrested in April 2005, the police detectives showed him "a mug shot photo of a man" and Johnson was told the man in the photo was defendant. However, Johnson stated he "did not know" defendant. While at the police station, he walked past the man from the photo. Again, he was asked if he knew defendant and Johnson said no. He was then placed in a room and told he would be given a box of cigarettes. The police were "pressuring" Johnson and saying he knew defendant was present at the home invasion and the victim had named him. Johnson said that he

"went along with what the Detectives were telling [him] so they would give [him] a box of cigarettes." He also said that he suffers from bipolar disorder and was deprived of his medication by police. Johnson provided a statement and named defendant as one of the people involved due to the pressure from the detectives. Johnson further stated that the State told him that he would receive a sentence of 45 to 60 years if he did not testify against defendant. He then testified at trial that defendant participated in the home invasion on 4515 South Leamington Avenue in Chicago, on March 10, 2005, but this testimony was not true. Defendant "was not present and did not participate in the home invasion" and Johnson knew that defendant was not involved because he was at the scene of the home invasion. He never received the affidavit from defendant's prior postconviction counsel.

¶ 18     Henry stated in his October 2016 affidavit that he had known defendant since they were children. On March 10, 2005, he saw Johnson in a van with two other men near Roosevelt and Sacramento. Johnson was the driver, one of the men was in the front passenger seat, and the other man was in the back seat. Defendant was not in the vehicle and no one else was present. Henry had known Johnson since Henry was around 12 years old. At that time, Henry lived in Harvey, Illinois, and he told Johnson that he would pay him for a ride home. Johnson took the money and agreed to drive Henry home. Henry sat in the back of the vehicle. He did not know the names of the other men and had never seen them before. After Johnson stopped for gas, he pulled into the neighborhood near Leamington and 45th Street and parked the car. Johnson told Henry that he needed to make a stop. Johnson and the front seat passenger then exited the vehicle. Henry remained in the van with the other back seat passenger. He did not see where Johnson and the man went. About 15 minutes later, the man in the back seat exited and walked in the same direction as Johnson and the first man. Henry remained in the van alone. About 20 to

25 minutes later, he saw a police car drive the wrong way down the one-way street. A few minutes later, Johnson and the other men ran back to the van. No one else got in the van and it was "only the four of [them] in the car." Henry no longer wanted Johnson to give him a ride home and asked for his money back. Johnson gave Henry half of his money because he had used the rest for gas. Johnson drove Henry to Cicero and Henry exited the van.

¶ 19    Henry stated defendant was never in the van with them at any point. Henry was questioned by police about a month later and shown pictures of Johnson and defendant. He said he knew defendant and then requested a lawyer. He did not talk to the police any further. Henry was released a short time later. In 2016, Henry spoke with Johnson about the case. Johnson told him that defendant was not involved in any way and was not present at the scene. Johnson also said that the police made him give a statement implicating defendant. At the time of defendant's trial, Henry did not come forward because he did not want to get involved and was afraid of being hurt by the offenders or the victims.

¶ 20    Defendant also attached police reports which listed Henry as a suspect. One report stated that Henry declined to provide a statement and requested an attorney. The reporting detective stated that Henry was released without charges due to a lack of physical evidence or witness identification.

¶ 21    In his April 2015 affidavit, Slater attested that in early to mid-March 2005, a man named Marcus contacted Slater and asked if he wanted to buy a firearm. Slater asked what kind of firearm it was and Marcus told him it was a .357 Magnum. Marcus asked $100 for the firearm and Slater said he did not have $100, but he could pay $50. Marcus accepted the $50 offer and brought the gun to Slater's home. After Slater exchanged the money for the weapon, Slater asked if the gun was "hot," "meaning if anyone [had] been shot with it," and Marcus responded that

Slater had already bought the gun and it did not matter. In either late March or early April 2005, he ran into a friend known as "Jamal," who told Slater that some men had attempted to shoot Jamal and his friends a few days before. Jamal said he needed some guns for protection, but they did not have any money. Because Slater did not want Jamal to be killed or shot, he gave Jamal the .357 Magnum revolver he had bought from Marcus, as well as a 32-caliber revolver. After Slater gave the guns to Jamal, he never saw the guns again. Defendant also attached a death certificate for Slater, indicating that Slater died from multiple gunshot wounds in September 2016.

¶ 22    In her affidavit, Alicia Stewart stated that she interviewed Slater in August 2016 and had an appointment to meet with defendant's postconviction counsel and Slater, but Slater died prior to that meeting. During the August 2016 interview, Slater recounted the same information he set forth in his affidavit about purchasing the firearm and later giving it to defendant.

¶ 23    Defendant also included the 2009 affidavit from his prior postconviction counsel which was previously submitted with his initial petition. Counsel stated that he spoke with Johnson and Johnson told him that defendant was not a participant in the home invasion. Counsel also sent an affidavit to Johnson, but it had "not *** been returned to this office by the date of the filing of this petition."

¶ 24    In addition, defendant attached the previously filed affidavits from Latrone Thomas, defendant's brother, and George Davis. Thomas stated that on March 10, 2005, defendant called him and recounted that following a fight with his girlfriend, the girlfriend asked defendant to remove his belongings from her home. Thomas agreed to store defendant's belongings. Defendant then picked up Thomas around 7:45 p.m., with his friend Davis. The three men then packed and removed defendant's belongings from defendant's car. Thomas estimated this took

approximately 30 to 45 minutes. Thomas gave this information to defendant's trial counsel but was not subpoenaed to testify at defendant's trial.

¶ 25    Similarly, Davis stated in his affidavit that on March 10, 2005, defendant picked him up around 3 p.m. Davis was present when defendant received a phone call from his girlfriend telling defendant to take his belongings out of her apartment. Davis stated that at about 7 p.m. he and defendant went to defendant's girlfriend's apartment and then removed defendant's belongings from the apartment. They then drove to Thomas's home, and the three men unloaded defendant's belongings from the car. Davis estimated it took 30 to 40 minutes to unload the car. Davis continued to ride around with defendant until around midnight when defendant took Davis home. Davis provided defendant's trial counsel with this information but was not called to testify at trial.

¶ 26    In June 2018, the State filed a motion to dismiss defendant's successive petition. In July 2018, defendant's case was reassigned to a new assistant public defender. In May 2021, postconviction counsel filed her certificate in accordance with Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). The State subsequently amended its motion to dismiss in July 2022 and again in July 2023, and argued, in relevant part, that defendant's attached affidavits were insufficient to make a substantial showing of actual innocence. Additionally, the State contended that Johnson's affidavit could not support a freestanding claim of actual innocence because defendant had asserted a claim of perjury based on Johnson's allegedly false trial testimony.

¶ 27    In April 2024, the trial court entered its written order granting the State's motion and dismissing defendant's petition. In rejecting defendant's actual innocence claim, the court found that defendant failed "to show how any of the evidence provided in the affidavits conclusively

10

overcomes the State's case and raises any likelihood that a juror would decide not to convict" defendant. The court further stated defendant's evidence failed to establish the conclusive character requirement for an actual innocence claim because nothing in the affidavits conflicted with Tammie's testimony or identification of defendant or the physical evidence obtained from defendant's home.

¶ 28    This appeal followed.

¶ 29    On appeal, defendant argues that he set forth a substantial showing of actual innocence based on the newly discovered evidence presented by his supporting affidavits, which established defendant was not involved in the home invasion of the Allen home. The State responds that the trial court properly granted its motion to dismiss defendant's successive petition because he failed to make a substantial showing to warrant a third stage evidentiary hearing.

¶ 30    The Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 through 122-8 (West 2016)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2016); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. A proceeding under the Act is not an appeal of a defendant's underlying judgment but instead is a collateral attack on the judgment. *People v. Evans*, 186 Ill. 2d 83, 89 (1999). The purpose of a postconviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001).

¶ 31    However, the Act only contemplates the filing of one postconviction petition with limited exceptions. 725 ILCS 5/122-1(f) (West 2016); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). The supreme court has recognized two bases upon which the bar against successive proceedings will be relaxed. *People v. Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id.*; see 725 ILCS 5/122-1(f) (West 2016). The second basis to relax the bar against a successive postconviction is "what is known as the 'fundamental miscarriage of justice' exception." *Id.* ¶ 23. "In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence." *Id.* "The United States Supreme Court has stated that the exception serves 'as an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty [citation], guaranteeing that the ends of justice will be served in full.' " *Id.* (quoting *People v. Szabo*, 186 Ill. 2d 19, 43 (1998) (Freeman, C.J., specially concurring, joined by Heiple, J.), citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)).

¶ 32    Here, the trial court advanced defendant's petition to the second stage and the State filed a motion to dismiss defendant's petition. At this stage, we accept all well-pleaded facts that are not positively rebutted by the trial record as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If a petition sets forth a substantial showing of a constitutional violation, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2016). We review the dismissal of defendant's petition *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 33    We first consider the State's argument that defendant's actual innocence claim premised on Johnson's 2016 affidavit is barred by *res judicata*. "The doctrine of *res judicata* bars

consideration of issues that were previously raised and definitively settled by judicial decision." *People v. Montanez*, 2023 IL 128740, ¶ 103. A defendant cannot obtain relief under the Act simply by rephrasing previously addressed issues in constitutional terms in his petition. *People v. Flores*, 153 Ill. 2d 264, 277 (1992). In his initial postconviction petition, raising a claim of actual innocence, defendant supplied two affidavits, one was an unsworn, unnotarized affidavit attributed to Johnson and the other was from postconviction counsel which stated that a signed and notarized version of Johnson's affidavit was not received by counsel before the petition was filed.

¶ 34     According to the State, Johnson's sworn and notarized affidavit from 2016 cannot be used to support defendant's current actual innocence claim because it "reiterates what was in the prior affidavit with minimal additional information" and reasserting the same recantation evidence cannot overcome the bar of *res judicata*. Defendant responds that his actual innocence claim in his initial petition was not based on an affidavit from Johnson because Johnson did not provide a signed and sworn affidavit until 2016, several years after defendant's initial petition was denied. Defendant further contends the unsworn document was a "nullity" because "it does not have Johnson's signature, proper notarization, and it does not even contain the correct spelling of Johnson's first name."

¶ 35     The Act requires a defendant attach to his or her petition "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2006). "[A] writing that has not been sworn to before an authorized person does not constitute an affidavit." *People v. Tlatenchi*, 391 Ill. App. 3d 705, 714 (2009). " 'An affidavit that is not sworn is a nullity.' " *People v. Wideman*, 2013 IL App (1st) 102273, ¶ 15 (quoting *Roth v. Illinois Farmers Insurance Co.,* 202 Ill. 2d 490, 497 (2002)).

¶ 36    In the appeal from defendant's initial petition, this court found that defendant "failed to submit newly discovered evidence to support his claim of actual innocence. Instead, he attached the unsigned, unsworn 'affidavit' of Johnson, prepared by defendant's postconviction counsel." *Thomas*, No. 1-09-2907, at 15. This court implicitly found this "affidavit" to be a nullity and held it was insufficient to raise a claim of actual innocence. We recognized defendant's "failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition and by itself justifies the petition's summary dismissal." *Id*. at 15-16 (citing *People v. Collins*, 202 Ill. 2d 59, 66 (2002)).

¶ 37    We find the 2016 affidavit from Johnson does not "reiterate" the same statements as the unsworn document. The "affidavit" prepared by postconviction counsel contained only general statements that Johnson's testimony was not true and that defendant "not only did not participate in this home invasion he was not even there." Johnson purportedly stated that he testified against defendant because the State told him he would receive a sentence of up to 60 years and he felt he had no choice. Notably, this document does not include an admission by Johnson that he participated in the home invasion. In contrast, Johnson's sworn and notarized affidavit provides significant details of the home invasion as well as the pressure from detectives during his interrogation, including Johnson's admission that he was present at the scene of the home invasion, defendant was not present, and he did not know defendant prior to his arrest. Since the unsworn "affidavit" from defendant's initial petition was not a valid affidavit from Johnson, we reject the State's argument that defendant's actual innocence claim is barred by *res judicata*.

¶ 38    Turning to the merits of defendant's actual innocence claim, defendant contends he has made a substantial showing of actual innocence based on the newly discovered evidence.

14

Specifically, defendant focuses on the affidavits from Johnson and Henry to substantially show that he was not involved in the home invasion of the Allen residence.

¶ 39    Since defendant's petition was dismissed at the second stage, we review the judgment of dismissal to determine whether, after taking as true all of defendant's allegations that are not refuted by the record, those allegations establish or "show" a constitutional violation. See *People v. Domagala*, 2013 IL 113688, ¶ 35. In other words, the substantial showing of a constitutional violation that must be made at the second stage is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle the defendant to relief. *Id*.

¶ 40    "The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered evidence." *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47; see also *People v. Jackson*, 2021 IL 124818, ¶ 41. We review each of these factors in turn.

¶ 41    We first consider whether the affidavits from Johnson and Henry constitute newly discovered evidence. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. Due diligence requires a defendant show that "his failure to discover the evidence *prior to trial* was not due to a lack of diligence." (Emphasis in original.) *People v. Smith*, 2015 IL App (1st) 140494, ¶ 19 (citing *People v. Molstad*, 101 Ill. 2d 128, 134 (1984)). Defendant argues that both of these affidavits were newly discovered and he could not

have discovered them at the time of his trial through due diligence. According to defendant, he did not have evidence at the time of his trial that Johnson had been denied medication, was pressured by detectives to implicate defendant, and was threatened by prosecutors to testify falsely against defendant. Similarly, defendant asserts that he could not have compelled Henry to testify at trial after Henry had invoked his right to remain silent and was both unwilling to provide a statement and fearful to come forward at that time. The State responds that neither of the affidavits were newly discovered and defendant failed to show due diligence in obtaining these affidavits. Specifically, the State contends that defendant failed to show due diligence in obtaining Johnson's sworn affidavit and Johnson's affidavit was not newly discovered because Johnson testified at defendant's trial and was subject to cross-examination. Regarding Henry, the State argues that defendant failed to show due diligence in securing Henry's affidavit because Henry did not state in his affidavit that he would not have spoken to someone on defendant's behalf and defendant was aware of Henry having been questioned by police during the investigation.

¶ 42    Regarding Johnson's affidavit, we find that defendant has established that the affidavit is "newly discovered" for purposes of his actual innocence claim. In *People v. Harper*, 2013 IL App (1st) 102181, ¶ 42, as in the present case, one of the issues on appeal was whether a recantation affidavit from a trial witness was newly discovered. There, the recanting witness claimed that "his trial testimony was a lie and that police officers threatened him to obtain the testimony." *Id*. The State, as it does in this case, argued that the witness's affidavit should not be considered newly discovered because he "was subject to extensive cross-examination at the defendant's *** trial." *Id*. The reviewing court rejected the State's argument and found that "due diligence could not have compelled [the witness] to testify truthfully at *** trial." *Id*. We reach

16

the same conclusion here. Defendant in this case could not have known before trial that Johnson would provide false testimony after being pressured by police, including a threat of a sentence up to 60 years. See *e.g.*, *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 53 (knowledge of a witness alone is not dispositive of whether information is "newly discovered"; even recantation testimony can be considered "new" where the defendant lacks evidence available at the time of trial to demonstrate that a witness is lying or withholding information).

¶ 43    Defendant asserts that Henry's affidavit also satisfied the newly discovered requirement. According to defendant, Henry was an alleged suspect and invoked his right to remain silent. The police reports attached to defendant's petition support this assertion and show that Henry was released when no physical evidence or identification implicated him in the home invasion. Henry's statements in his affidavit corroborated those reports. He stated that he was questioned a month after the offense and was shown photographs of Johnson and defendant. Henry indicated that he knew defendant. Henry then invoked his right to counsel, did not provide any further statement to police, and was subsequently released. Henry stated that he did not come forward at the time of defendant's trial because he did not want to get involved and was afraid of being hurt by the offenders or the victims. "Newly discovered evidence includes testimony from a witness who 'essentially made himself unavailable as a witness' out of fear of retaliation or who was made unavailable through threats or intimidation to not testify." (Internal citations omitted.) *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 137. Both the police reports and Henry's affidavit clearly show that he invoked his right to remain silent, and Henry subsequently made himself unavailable due to his fear of retaliation.

¶ 44    Further, an affidavit from a witness may be considered newly discovered, even when the defense knew of the witness prior to trial. *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48. The

17

only evidence of Henry's potential involvement in the trial record was police reports indicating that he was questioned and released and Johnson's now recanted testimony that "Ball," identified as Henry, told Johnson about the possible home invasion. In contrast to this trial evidence, Henry stated in his affidavit that the day of the home invasion, he ran into Johnson and asked for a ride home. Johnson then proceeded to stop and the other occupants, who did not include defendant, exited the vehicle, leaving Henry alone in the car. Taking the well-pleaded allegations in the petition as true and construing Henry's affidavit in favor of defendant, as we must at this stage of postconviction proceedings, we find that no amount of due diligence by defendant could have revealed Henry's presence in Johnson's car at the time of the home invasion, as well as his knowledge that defendant was not involved. Accordingly, we find that Henry's affidavit provides newly discovered evidence.

¶ 45 We next consider whether these affidavits provide material and noncumulative evidence. Evidence is material if it is relevant and probative of the defendant's innocence. *Robinson*, 2020 IL 123849, ¶ 47. Noncumulative evidence adds to the information that the fact finder heard at trial. *Id.* Further, every defendant has the constitutional right to defend against the theory of guilt upon which he was prosecuted, convicted, and sentenced. *Ayala*, 2022 IL App (1st) 192484, ¶ 145 (citing *People v. Millsap*, 189 Ill. 2d 155, 166 (2000)).

¶ 46 Defendant argues that the evidence in these affidavits is material and noncumulative because this evidence indicates that he was not present and did not participate in the home invasion. Both affidavits corroborate defendant's postconviction claim of actual innocence. According to defendant, Johnson's affidavit includes his own admission that Johnson was involved in the home invasion, defendant was not involved in the home invasion, Johnson did not know defendant prior to his arrest, and his trial testimony was the result of coercion and

18

pressure from law enforcement. Henry, in his affidavit, stated that he knew both defendant and Johnson, was getting a ride from Johnson when the home invasion occurred, and defendant was not present in the car at any time. Taken as true, defendant contends that these affidavits are both material and noncumulative and exonerate defendant from any involvement in the home invasion.

¶ 47 The State responds that Johnson's affidavit is immaterial because it "merely impeaches" Johnson's trial testimony. The State also argues Johnson's affidavit conflicts with the trial evidence by focusing on Tammie Allen's testimony, especially her identification of defendant. However, Johnson's affidavit provides details not presented at trial, including that defendant was not present at the time the offenses were committed and Johnson did not know defendant prior to Johnson's arrest in this case. As defendant points out in his reply brief, the State's argument conflates the question of whether the evidence is material and noncumulative with a finding that the evidence is of sufficient conclusive character, which is a separate requirement for an actual innocence claim. We conclude that Johnson's affidavit is material because it speaks to the ultimate issue in the case, *i.e.*, whether defendant participated in the commission of the Allen home invasion.

¶ 48 The State further contends that Johnson's affidavit is cumulative because "the proposed evidence boils down to Johnson's credibility as witness which was already before the jury." However, witness credibility is not before us at this stage in postconviction proceedings. See *People v. Sanders*, 2016 IL 118123, ¶ 40 ("Credibility of witnesses is a matter that can only be resolved by an evidentiary hearing."). We find Johnson's affidavit is not cumulative because no one at trial testified that defendant was not involved in the offenses, which remains the main issue in the case. *People v. Simms*, 2021 IL App (1st) 161067-B, ¶ 23 (citing Ortiz, 235 Ill. 2d at

19

336). Stated differently, Johnson's affidavit is noncumulative because it does not repeat testimony from the trial; it presents a new perspective of the offense.

¶ 49    While the State concedes that Henry's affidavit is noncumulative, it asserts that the affidavit is immaterial because Henry has no personal knowledge of what occurred in the Allen house during the home invasion. This contention minimizes what Henry does have personal knowledge of, namely the two other men present in the car with Johnson. According to Henry, these men exited the vehicle at different times, walked toward the Allen home, and returned to the car with Johnson after the home invasion occurred. Further, Henry stated that he has known defendant since they were children and he was not present in the car that night. Henry's observations are still material to the question of whether defendant participated in the offense. See *Fields*, 2020 IL App (1st) 151735, ¶ 53 (finding a witness's affidavit was material even though she did not see the shooting but had observed four men with guns approach a club entrance moments before she heard gunshots).

¶ 50    We find both affidavits provide evidence that tends to disprove the State's trial theory that defendant was an active participant in the home invasion, and thus, they are " 'material to the theory of guilt upon which defendant was prosecuted, convicted, and sentenced.' " *Ayala*, 2022 IL App (1st) 192484, ¶ 145 (quoting *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 130). Accordingly, the affidavits have satisfied this requirement.

¶ 51    Finally, we review whether these affidavits are of such conclusive character that they would probably change the result on retrial. Under this component, we are to consider whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 48. The new evidence need not be entirely dispositive to be likely to alter the result on retrial. *Id*.

20

"Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id*. This element requires only that the defendant "present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id*. ¶ 56. While impeachment evidence, such as Johnson's affidavit, is generally not of a such conclusive character to warrant postconviction relief, "when newly discovered evidence is both exonerating and contradicts the State's evidence at trial, it is capable of producing a different outcome at trial." *Harper*, 2013 IL App (1st) 102181, ¶ 49.

¶ 52    When the affidavits of Johnson and Henry are taken as true and liberally construed (*Sanders*, 2016 IL 118123, ¶ 31), this evidence is relevant and probative of defendant's innocence because they directly attack the credibility of the State's witnesses placing defendant at the Allen home. At a retrial, defendant would have potentially two witnesses testifying that he was not present that night, one of whom was an admitted participant in the home invasion. The State counters that both affidavits are conclusory and fail to offer any details of what occurred during the home invasion inside the Allen home. We disagree.

¶ 53    The commission of the home invasion is not at issue in this appeal, the question before us is whether defendant was one of the offenders who participated in the home invasion. Both Johnson and Henry attested in their affidavits that defendant was not present. While the trial evidence included identifications from both Tammie and David, both identifications have weaknesses. David was unable to identify defendant at trial as one of the offenders. Tammie testified that she was nearsighted and was not wearing her glasses. She also stated that defendant was wearing a hooded sweatshirt with the hood partially over his head. Tammie's eyes were partially covered by tape during the offense. During her interview with Detective Kampenga,

21

Tammie indicated that she only observed the side profile of the offender she identified as defendant. While we do not want to minimize her experience, the identification was made after an extraordinary and traumatizing offense. No physical evidence from the scene was a match for defendant, such as fingerprint or DNA evidence. The cigarette left at the scene by one of the offenders did not match defendant, Johnson, or codefendant Sanders. Although a gun used in the offense was recovered from an apartment where defendant lived, it does not definitively place defendant at the scene of the home invasion. We find that, taking Johnson's and Henry's affidavits as true, defendant has made a substantial showing that this evidence would likely change the outcome on retrial. See *Robinson*, 2020 IL 123849, ¶ 56.

¶ 54    Further, we find the State's reliance on *People v. Barnslater*, 373 Ill. App. 3d 512 (2007), and *People v. Collier*, 387 Ill. App. 3d 630 (2008), to be misplaced. The supreme court in *Robinson* overruled these cases and found that both decisions "used a standard that requires evidence of total vindication or exoneration to support a claim of actual innocence." *Robinson*, 2020 IL 123849, ¶ 55. The *Robinson* court observed that it had "specifically rejected the total vindication or exoneration standard and explained that 'evidence which is "materially relevant" to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim.' " *Id*. (quoting *People v. Savory*, 197 Ill. 2d 203, 213 (2001)).

¶ 55    For these reasons, we conclude that defendant has made a substantial showing of actual innocence based upon the newly discovered evidence in the affidavits from Johnson and Henry. Although alibi evidence is generally not considered newly discovered for our purposes here, we note defendant would also have the opportunity to present alibi testimony from Thomas and Davis at an evidentiary hearing. See *Edwards*, 2012 IL 111711, ¶ 37 (finding alibi evidence could have been discovered sooner through the exercise of due diligence, and thus, was not

22

newly discovered). We offer no opinion regarding whether defendant will be successful in establishing his actual innocence claim following an evidentiary hearing.

¶ 56     Because we are remanding for an evidentiary hearing, we need not reach defendant's alternative claim of unreasonable assistance of postconviction counsel. Accordingly, we reverse the trial court's dismissal of defendant's claim of actual innocence, and we remand for a third stage evidentiary hearing as directed in this order.

¶ 57     Reversed and remanded.